EL PUEBLO DE PUERTO RICO, demandante y recurrido, *v.* GA-
BRIEL ORTIZ COUVERTIER, acusado y peticionario.

*Número:* CE-88-778          *Resuelto:* 9 de marzo de 1993

884

*Enrique Miranda Merced*, abogado del peticionario; *Norma Cotti Cruz, Subprocuradora General*, y *Rose Mary Corchado Lorent, Procuradora General Auxiliar*, abogadas de El Pueblo.

El Juez Asociado Señor Rebollo López emitió la opinión del Tribunal.

El peticionario Gabriel Ortiz Couvertier fue acusado ante el Tribunal Superior de Puerto Rico, Sala de Carolina, por el delito de robo, Art. 173 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4279. Luego de ser declarado culpable del delito imputado, en juicio celebrado por tribunal de derecho, el 29 de mayo de 1987 el foro de instancia dictó sentencia imponiéndole a éste una pena de doce (12) años

de reclusión. La representación legal del acusado, Lcdo. Helión Cruz González, presentó una moción solicitando "fianza en apelación". Luego de que las partes argumentaran oralmente la cuestión en una vista señalada a esos efectos, el tribunal declaró con lugar la referida moción, fijándole al acusado una fianza en apelación de cincuenta mil dólares ($50,000), a ser prestada la misma "hipotecariamente y/o en efectivo". El 23 de junio de 1987 —fuera del término de veinte (20) días que establece la Regla 194 de las Reglas de Procedimiento Criminal, 34 L.P.R.A. Ap. II— el licenciado Cruz González presentó un escrito de apelación en la secretaría del tribunal de instancia.

El 7 de julio de 1987 se radicó ante dicho foro una "moción solicitando regrabación de los procedimientos" firmada la misma por el Lcdo. Carlos Noriega, en la cual éste indicaba que el acusado convicto tenía interés en que se perfeccionara su recurso de apelación y que le había solicitado que realizara las gestiones pertinentes a esos efectos. El 20 de julio de 1987 el Lcdo. Max Pérez Preston presentó una "moción de reconsideración" en la que solicitó que se permitiera que la fianza en apelación que se le había impuesto al acusado fuera de cincuenta mil dólares ($50,000), si la misma se prestaba en efectivo, y de treinta y cinco mil dólares ($35,000) si ésta era prestada "hipotecariamente". El 21 de julio de 1987, el tribunal de instancia emitió una "Resolución" declarando con lugar dicha moción.[1]

Informado por su abogado de récord que el escrito de apelación había sido radicado fuera del término jurisdiccional, el acusado convicto presentó ante el tribunal de instancia, *por derecho propio*, una "moción bajo la Regla 192.1 de Procedimiento Criminal", moción que fue señalada para ser discutida el 20 de mayo de 1988. En dicho día el licenciado Cruz González le informó al tribunal que su repre-

---

[1] De los autos originales *no* surge escrito alguno, de parte de los licenciados Noriega y Pérez Preston, asumiendo la representación legal del acusado.

sentado estaba en libertad bajo "fianza en apelación" y que dicha apelación "no se había perfeccionado". El licenciado Pérez Preston solicitó del tribunal que lo relevara tanto a él como al licenciado Carlos Noriega de la representación legal del acusado convicto y que cancelara la fianza en apelación. El tribunal accedió a todo lo solicitado por el licenciado Pérez Preston, ordenando el ingreso del recurrente en una institución penal. En dicho día *no* se discutió la moción radicada por el acusado convicto bajo la Regla 192.1 de Procedimiento Criminal, 34 L.P.R.A. Ap. II.

Durante el mes de agosto de 1988, el convicto presentó varias "mociones" por derecho propio, a saber: moción solicitando reconsideración de sentencia; moción solicitando que el tribunal relevara el licenciado Cruz González como su abogado, y moción solicitando remedio especial. El tribunal de instancia señaló vista para la discusión de dichas mociones. El 23 de septiembre de 1988 el referido foro relevó, nuevamente, al licenciado Pérez Preston de la representación legal, suspendiendo la vista señalada. El día 27 de octubre de 1988, se discutió, finalmente, la antes mencionada moción bajo la Regla 192.1. En dicho día asumió la representación legal del acusado el Lcdo. Enrique Miranda Merced, quien argumentó, en síntesis y en lo pertinente, que el acusado no había estado adecuadamente representado por abogado durante los procedimientos apelativos, y que, por ende, se le había violado su derecho constitucional a tener asistencia de abogado. El asunto quedó sometido. Expresando que la determinación sobre si se le ha violado o no a un acusado el derecho a una adecuada representación legal, en la etapa apelativa, principalmente depende del hecho de si éste ha estado o no representado por un abogado de oficio o de su propia selección, el Tribunal Superior, Sala de Carolina, declaró dicha moción "no ha lugar".

Inconforme, acudió el acusado ante este Tribunal, vía

*certiorari,* alegando que el tribunal de instancia había errado al

> ...negarse a resolver que la inacción —no justificada— del entonces abogado del peticionario, al no radicar oportuna y correctamente el escrito de apelación, privó a éste de su derecho a una debida asistencia legal durante la etapa apelativa del proceso, en violación de lo dispuesto en el Artículo II[, ] Sección 11 de la Constitución del Estado Libre Asociado .... Alegato del recurrido, págs. 1–2.

Expedimos el auto de *certiorari.* Estando en condiciones de resolver el recurso radicado, procedemos a así hacerlo.

I

■ La Sec. 11 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1, ed. 1982, págs. 307–308, garantiza que:

> En todos los procesos criminales, el acusado disfrutará del derecho ... *a tener asistencia de abogado* .... (Énfasis suplido.)[2]

■ El derecho a tener representación legal en casos criminales se ha consagrado como parte fundamental de la cláusula del debido proceso de ley. *Pueblo v. Moreno González,* 115 D.P.R. 298 (1984); *Pueblo v. Gordon,* 113 D.P.R. 106 (1982). En Estados Unidos, véanse: *Wheat v. United States,* 486 U.S. 153 (1988); *United States v. Ash,* 413 U.S. 300 (1973); *Gideon v. Wainwright,* 372 U.S. 335 (1963); *Johnson v. Zerbst,* 304 U.S. 458 (1938); *Powell v. Alabama,* 287 U.S. 45 (1932). Se ha reconocido, además, que el derecho constitucional a la asistencia de abogado *debe ser uno adecuado y efectivo.* Véanse: *United States v. Cronic,* 466

---

[2] En Estados Unidos la Enmda. VI de la Constitución de Estados Unidos dispone:

"In all criminal prosecutions the accused shall enjoy the right to have the assistance of counsel for his defense."

U.S. 648, 653 (1984); *Kimmelman v. Morrison*, 477 U.S. 365 (1986); *Darden v. Wainwright*, 477 U.S. 168 (1986).([3])

El derecho a tener una efectiva o adecuada representación legal puede quedar menoscabado cuando:

[(a)] el abogado es incompetente para la tarea que se le asigna,

[(b)] *como cuestión de hecho la labor desplegada demuestra su inefectividad*,

[(c)] hay un potencial o actual conflicto de intereses para el abogado,

[(d)] las reglas o actuaciones del tribunal constituyen una limitación irrazonable al derecho a tener adecuada asistencia de abogado. E.L. Chiesa, *Derecho procesal penal de Puerto Rico y Estados Unidos*, Colombia, Ed. Forum, 1991, Vol. I, Sec. 7.9, págs. 449–550.

▪ Resulta importante señalar, y enfatizar, que desde hace mucho tiempo este Tribunal —en *Pueblo v. Mojica Pedroza*, 92 D.P.R. 733 (1965)— ha resuelto que

[r]ecae sobre nosotros en este Tribunal el deber de examinar cuidadosamente el récord para ver si las formalidades y el ritual judicial ejecutados en verdad *contienen la substancia del debido proceso de ley que se supone que contengan. Sin la substancia que les da su razón de ser, las formalidades son peor que nada.* (Énfasis suplido.)([4])

---

([3]) En *Strickland v. Washington*, 466 U.S. 668 (1984), el Tribunal Supremo de Estados Unidos estableció dos (2) factores a considerar para determinar si el derecho a una efectiva asistencia de abogado había sido violado en tal forma que el representado o la persona afectada tenía derecho a un remedio, a saber:

(1) si el desempeño de la representación podía considerarse como deficiente (si cae por debajo de un parámetro objetivo de razonabilidad), y

(2) si el cliente se perjudicó por tal deficiencia.

Le corresponde al acusado demostrar que existe una razonable probabilidad de que si no hubiere sido por la falta del abogado, el resultado del procedimiento hubiera sido diferente.

([4]) La doctrina sobre la debida asistencia de abogado en los procesos criminales fue resumida en *Pueblo v. Morales Suárez*, 117 D.P.R. 497 (1986), al indicar que:

(1) existe una presunción de que la conducta del abogado defensor está comprendida dentro de lo que se reconoce como una razonable asistencia legal;

(2) el apelante tiene el peso de probar el alegado estado de indefensión a causa de la supuesta incompetencia de su abogado;

(3) la supuesta incompetencia, de existir, tiene que ser en grado extremo, o en el sentido de causar un perjuicio sustancial que pueda sostener la probabilidad que de no haber ocurrido el resultado del juicio hubiese sido distinto;

(4) meros errores o equivocaciones por parte del defensor *que no afecten la validez del dictamen ni el debido proceso de ley no es suficiente*, y

■ Hemos reconocido el derecho de un acusado al disfrute de asistencia legal: en la etapa investigativa cuando ésta toma caracter acusatorio, en el acto de lectura de acusación, durante el juicio, al dictarse sentencia y *en la fase apelativa*. Véanse: *Pueblo v. Sánchez Vega*, 95 D.P.R. 718 (1968); *Rivera Escuté v. Jefe Penitenciaría*, 92 D.P.R. 765 (1965); *Soto Ramos v. Supert. Granja Penal*, 90 D.P.R. 731 (1964). La representación legal, *en la etapa apelativa*, es de particular importancia ya que esta etapa del procedimiento penal es la única —y posiblemente última— oportunidad que tiene el acusado para demostrar que su convicción es una contraria a derecho. *Evitts v. Lucey*, 469 U.S. 387 (1985).

■ Sabido es que una apelación es un proceso adversativo en el que se requiere, por su complejidad, la ayuda de un abogado. *Evitts v. Lucey*, ante. A esos efectos, en *Douglas v. California*, 372 U.S 353 (1963), el Tribunal Supremo de los Estados Unidos resolvió que la Décimocuarta Enmienda de la Constitución de los EE.UU. le garantiza a todo acusado el derecho a tener asistencia de abogado en su primera apelación.([5]) Por nuestra parte, y desde hace muchos años, hemos garantizado el derecho de asistencia de abogado en todo momento del procedimiento criminal, incluyendo la etapa apelativa. *Soto Ramos v. Supert. Granja Penal*, ante.

## II

A la luz de los principios antes expuestos, debemos resolver si al peticionario de epígrafe se le violó su derecho a

---

(5) finalmente, se debe determinar si la actuación del abogado vulneró de tal modo el adecuado funcionamiento del sistema adversativo que no pueda concluirse que el juicio tuvo un resultado justo.

([5]) Esta doctrina fue posteriormente reafirmada por el Supremo federal en *Penson v. Ohio*, 488 U.S. 75 (1988). En *Rodríguez v. United States*, 395 U.S. 327 (1969), el Tribunal Supremo anuló una norma del Noveno Circuito que le requería a las personas que habían sido privadas de su derecho a apelar, por causa de inefectividad del abogado, demostrar que tal privación le había causado perjuicio.

una adecuada y efectiva representación legal en la etapa apelativa.

A tenor con la Regla 194 de Procedimiento Criminal,[6] el abogado del acusado tenía veinte (20) días para apelar, esto es, hasta el 18 de junio de 1987; no obstante, el escrito de apelación fue presentado el 23 de junio de 1987, cinco (5) días más tarde. De los autos del caso no surge una explicación para esta demora. Sí surge de los mismos, sin embargo, *el marcado interés del peticionario en apelar su caso*: en el acto de imposición de sentencia se le informó verbalmente al tribunal de instancia de la intención del acusado peticionario de apelar de la misma ante este Tribunal; a esos efectos se solicitó fianza en apelación, solicitud que le fue concedida por el foro de instancia;[7] aun cuando fuera de término, se radicó un escrito de apelación; y finalmente, se gestionó la ayuda de otros abogados para que perfeccionaran el recurso. Resulta importante señalar que el peticionario desconocía el hecho de que no se había radicado en tiempo el escrito de apelación, enterándose de ello cuando el propio abogado así se lo informó.

La acción del abogado del acusado peticionario, al no presentar el escrito de apelación en tiempo, fue una del todo inefectiva e inadecuada. *Esta acción privó a su defendido, el aquí peticionario, de tener una segunda oportunidad de probar su inocencia, independientemente de si lo es o no.*[8] Esta situación cobra mayor relevancia en el pre-

---

[6] Regla 194 de Procedimiento Criminal, 34 L.P.R.A. Ap. II. Ésta dice:

"La apelación se formalizará presentando un escrito de apelación en la Secretaría de la sala del tribunal que dictó sentencia, dentro de los veinte (20) días siguientes a la fecha en que la sentencia fue dictada ...."

[7] Al conceder fianza en apelación, el tribunal sentenciador debe hacer una determinación de si el "recurso entablado" plantea una cuestión sustancial o si la naturaleza del delito o el carácter o antecedentes penales aconseja la reclusión del convicto mientras se ve su apelación. Regla 198 de Procedimiento Criminal, 34 L.P.R.A. Ap. II.

[8] Los términos para apelar o revisar sentencias, penales o civiles, son fijados por ley para conferir jurisdicción al tribunal apelativo. *González v. Jiménez*, 70 D.P.R. 165 (1949); *Concepción v. Junta de Contabilidad*, 80 D.P.R. 194 (1958). Estos

sente caso cuando consideramos el hecho de que el foro de instancia entendió procedente en derecho concederle fianza en apelación al peticionario Ortiz Couvertier. Ello, *cuando menos*, significa que dicho foro entendió que la apelación a radicarse planteaba cuestiones sustanciales de derecho. Véase Regla 198 de las Reglas de Procedimiento Criminal, 34 L.P.R.A. Ap. II.

Como indicáramos al comienzo, una lectura integral de la resolución que emitiera el tribunal de instancia, denegatoria de la moción que bajo la citada Regla 192.1 de Procedimiento Criminal radicara el peticionario, demuestra que dicho foro denegó la misma a pesar de que posiblemente era del criterio que el peticionario Ortiz Couvertier no había tenido una adecuada representación legal con posterioridad a la imposición de la sentencia. Dicho foro entendió que la norma a aplicarse en esta clase de situaciones dependía de si el acusado es uno indigente o no; esto es, si su abogado es uno de oficio o de la selección privada del acusado. Erró en su proceder.

En *Cuyler v. Sullivan*, 466 U.S. 335 (1980), el Tribunal Supremo de los EE.UU. abolió la distinción entre abogados contratados por los acusados y aquellos asignados a personas indigentes a los fines de determinar si su actuación fue efectiva o no. En *Evitts v. Lucey*, ante, el referido Tribunal expresó que: "the constitutional guarantee of effective assistance of counsel at trial applies to *every* criminal prosecution, *without regard to whether counsel is retained or appointed.*" (Citas omitidas y énfasis suplido.)(⁹) Específicamente en cuanto a la etapa apelativa, la norma imperante en la jurisdicción federal lo es que constituye una violación al derecho del acusado a tener una adecuada re-

términos son de caracter jurisdiccional y no pueden ser prorrogados, ni aun por el propio tribunal apelativo. *Pueblo v. Miranda Colón*, 115 D.P.R. 511 (1984).

(⁹) Véanse, además: S. Polur, *Retained Counsel, Assigned Counsel: Why the Dichotomy?*, 55 A.B.A. J. 254 (1969); D.L. Bazelon, *The Realities of Gideon and Argersinger*, 64 (Núm. 4) Geo. L.J. 811 (1976).

presentación legal cuando éste ha manifestado su interés en apelar y su abogado no perfecciona dicho recurso sin que medie una explicación adecuada para su omisión; ello independientemente de que el abogado haya sido contratado por el acusado o designado por el tribunal. *Hollis v. United States*, 687 F.2d 257 (8vo Cir. 1982); *Sincox v. United States*, 571 F.2d 876 (5to Cir. 1978); *Chapman v. United States*, 469 F.2d 634 (5to Cir. 1972); *Leventhal v. Gavin*, 396 F.2d 441 (1er Cir. 1968); *United States v. Reincke*, 383 F.2d 129 (2do Cir. 1967); *Edge v. Wainwright*, 347 F.2d 190 (5to Cir. 1965).

■■■■ Igual conclusión se impone en nuestra jurisdicción; esto es, resolvemos que el derecho "a tener asistencia de abogado", garantizado por la Sec. 11 del Art. II de nuestra Constitución, ante, se entiende infringido cuando el abogado de un acusado, no obstante haber sido *expresamente instruido* por éste para que apele de la sentencia que le ha sido impuesta, radica el escrito correspondiente fuera del término jurisdiccional que para ello provee nuestro ordenamiento jurídico y/o dicho abogado incurre en cualquier otra acción u omisión que efectivamente priva a su representado de una adecuada representación legal en la etapa apelativa; ello *independientemente* del hecho que el abogado sea uno de oficio o haya sido escogido libremente por el acusado. Y es que ello no puede ser de otra manera. Como expresáramos desde hace más de tres (3) décadas —en *Pueblo v. Serbiá*, 78 D.P.R. 788, 792 (1955)— aun cuando el derecho a revisar una sentencia no es propiamente un derecho constitucional, tan pronto dicho derecho de apelación es incorporado, por acción legislativa, a un sistema de justicia pública, el mismo "entra a formar parte del debido proceso de ley y por lo tanto adquiere una categoría cuasiconstitucional"; situación que nos obliga a garantizarle a todo convicto de delito el derecho a una adecuada y efectiva representación legal en la etapa apelativa.

En esta clase de situaciones, naturalmente, el *peso de la prueba* para demostrar que no se tuvo esa adecuada representación legal recae sobre el acusado y, *de ordinario*, requerirá la presentación de prueba satisfactoria a esos efectos.

## III

Como hemos visto, el peticionario Ortiz Couvertier canalizó el planteamiento hoy ante nuestra consideración a través de las disposiciones de la *Regla 192.1* de Procedimiento Criminal, ante. Nos corresponde resolver, en consecuencia, si la mencionada disposición reglamentaria es un *mecanismo procesal apropiado* para ello. La misma establece que:

> Cualquier persona que se halle detenida en virtud de una sentencia dictada por cualquier sala del Tribunal de Primera Instancia y que alegue el derecho a ser puesta en libertad porque (a) la sentencia fue impuesta en violación de la Constitución o las leyes del Estado Libre Asociado de Puerto Rico o la Constitución y las leyes de Estados Unidos, o (b) el tribunal no tenía jurisdicción para imponer dicha sentencia, o (c) la sentencia impuesta excede de la pena prescrita por la ley, o (d) *la sentencia está sujeta a ataque colateral por cualquier motivo*, podrá presentar una moción a la sala del tribunal que impuso la sentencia para que anule, deje sin efecto o corrija la sentencia.

> Si el Tribunal determina que la sentencia fue dictada sin jurisdicción, o que la sentencia impuesta excede la pena prescrita por la ley, o que por cualquier motivo está sujeta a ataque colateral, *o que ha habido tal violación de los derechos constitucionales del solicitante que la hace susceptible de ser atacada colateralmente, el tribunal la anulará y dejará sin efecto y ordenará* que el peticionario sea puesto en libertad, o *dictará una nueva sentencia*, o concederá un nuevo juicio, según proceda. (Énfasis suplido.)([10])

---

([10]) 34 L.P.R.A. Ap. II, R. 192.1.

894

Como podemos notar, la citada Regla 192.1, incorporada a nuestro ordenamiento mediante la Ley Núm. 99 de 2 de junio de 1967, establece un procedimiento mediante el cual cualquier persona, recluida en virtud de sentencia, puede cuestionar la validez de su confinamiento.[11] Esto es, la misma provee un remedio al que se encuentra recluido para dejar sin efecto, corregir o anular la sentencia en virtud de la cual se encuentra confinado. D. Rivé Rivera, *Recursos Extraordinarios*, Programa de Educación Legal Continuada de la U.I.P.R., 1989, pág. 151.[12]

Curiosamente, y desde hace más de veinte (20) años, habíamos vislumbrado la utilización de la referida Regla 192.1 de Procedimiento Criminal, ante, como el vehículo procesal apropiado para "re-sentenciar" a un acusado que no había tenido representación legal en la etapa apelativa. En *Pueblo v. Sánchez Vega*, ante, al sancionar la utilización, a los fines antes mencionados, en dicho caso del recurso extraordinario del *Coram Nobis*,[13] hicimos constar que así lo hacíamos por cuanto para la fecha en que se

---

[11] El informe rendido por la Comisión de lo Jurídico del Senado de Puerto Rico, recomendando la aprobación de la citada Regla 192.1 contiene, entre otras, las siguientes expresiones:

"Al presente existen en nuestra jurisdicción varios recursos a través de los cuales se puede atacar la validez de una sentencia. Entre ellos el recurso de apelación, la moción para que se deje sin efecto la sentencia, el habeas corpus y el auto de *coram nobis*. La Regla 192.1 armoniza estos procedimientos proveyendo para una moción *mediante la cual puedan someterse al Tribunal todos los elementos de juicio necesarios para que éste pueda determinar la validez de la convicción.*" (Énfasis suplido.) 5 Servicio Legislativo de P.R. 592–593 (1967).

[12] La Legislatura entendió que era necesaria la Regla 192.1, ante, para que "cualquier reparo que se haga sobre la validez de las sentencias dictadas por los tribunales del Estado Libre Asociado sea dilucidado primeramente por nuestros tribunales". Servicio Legislativo de Puerto Rico, ante.

[13] "El Coram Nobis es un recurso proveniente del 'Common Law' mediante el cual se puede dejar sin efecto, o modificar, una sentencia dictada en un procedimiento criminal a base de hechos que no surgen de los autos, que existían antes de dictarse la sentencia, que hubiesen afectado la sentencia si la corte hubiese conocido la totalidad de los hechos y que no eran conocidos por la parte promovente, ni podían ser descubiertos por el promovente mediante el ejercicio de razonable diligencia. *Ponce v. F. Badrena e Hijos, Inc.*, 74 D.P.R. 225, 253 (1952); *Correa Negrón v. Pueblo*, 104 D.P.R. 286, 292 y 293 (1965).

había radicado el recurso no estaba vigente la citada Regla 192.1 de Procedimiento Criminal.([14])

En el ámbito federal existe una disposición estatutaria que contiene un lenguaje *prácticamente idéntico* al de la citada Regla 192.1 del Procedimiento Criminal, ante; esto es, la sec. 2255 del Título 28 del Código de los Estados Unidos. La misma establece que:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.
>
> A motion for such relief may be made at any time. 28 U.S.C. sec. 2255.

No son pocos los Tribunales de Circuito de Apelaciones federales que han sostenido que la transcrita sec. 2255 es

---

"Difiere de la moción de nuevo juicio que permite la Regla 188 de las de Procedimiento Criminal en que ésta tiene que presentarse 'antes de que se dicte la sentencia excepto cuando se fundare lo dispuesto en el apartado (e) de la Regla 188' pudiéndose presentar entonces dentro de los treinta días siguientes a la fecha en que se tuvo conocimiento de la muerte o incapacidad del taquígrafo de la pérdida o destrucción de sus notas. Regla 189 de las de Procedimiento Criminal. Se diferencia también de la moción bajo la Regla 192 de Procedimiento Criminal en que ésta permite la concesión de un nuevo juicio cuando los hechos que se han conocido después de la sentencia evidencien 'la inocencia del condenado'. La regla presupone que el 'condenado' está cumpliendo la sentencia bajo la jurisdicción del tribunal de tal manera que sea posible la celebración de un juicio nuevo. También la regla limita la concesión de juicio nuevo a las situaciones en que está en controversia 'la inocencia' del convicto. El Coram Novis, por el contrario, no tiene estas limitaciones, toda vez que puede presentarse luego de haberse cumplido la sentencia por cualquier razón que evidencie la nulidad del procedimiento que dio margen a la convicción, o que revele la ilegalidad de la sentencia. *United States v. Morgan*, 346 U.S. 502, 98 L.Ed. 248, 74 S.Ct. 247 (1954); *Pueblo v. Cruzado*, 74 D.P.R. 934, 939 (1953).

"*Se diferencia del Habeas Corpus, y del remedio que ofrece la Regla 192.1 de las de Procedimiento Civil [sic], en que éstos presuponen que el peticionario está 'bajo custodia' mientras que el Coram Nobis procede cuando el peticionario está en libertad por haberse extinguido la sentencia que se pretende anular.*" (Énfasis suplido.) D. Rivé Rivera, *Recursos Extraordinarios*, Programa de Educación Legal Continuada de la U.I.P.R., 1989, págs. 163–164.

([14]) *Pueblo v. Sánchez Vega*, ante, pág. 720 esc. 3.

el mecanismo procesal apropiado para que un convicto plantee ante el foro judicial la violación a su derecho a tener una adecuada asistencia de abogado en la etapa apelativa por razón de la inacción o tardanza del abogado en apelar un caso a pedido suyo. *Holloway v. U.S.*, 960 F.2d 1348 (8vo Cir. 1992); *Bonneau v. U.S.*, 961 F.2d 17 (1er Cir. 1992); *U.S. v. Tajeddini*, 945 F.2d 458 (1er Cir. 1991); *Page v. U.S.*, 884 F.2d 300 (7mo Cir. 1989); *Estes v. U.S.*, 883 F.2d 645 (8vo Cir. 1989); *Williams v. Lockhart*, 849 F.2d 1134 (8vo Cir. 1988); *Hollis v. United States*, ante; *Mack v. Smith*, 659 F.2d 23 (5to Cir. 1981); *Atilus v. United States*, 406 F.2d 694 (5to Cir. 1969). De hecho, el Tribunal Supremo de los Estados Unidos, en *Rodríguez v. U.S.*, 395 U.S. 327 (1969), ordenó que el acusado en dicho caso —al cual se le había violado su derecho a una efectiva asistencia de abogado en la etapa apelativa— fuera re-sentenciado al amparo de la citada sec. 2255.

A la luz de todo lo antes expuesto, *resolvemos que la citada Regla 192.1 de Procedimiento Criminal constituye un mecanismo procesal apropiado para que un convicto de delito en nuestra jurisdicción plantee la alegada privación de su derecho a tener una adecuada representación legal en la etapa apelativa.* La determinación que en relación con la misma haga el foro de instancia, luego de escuchar y admitir la prueba que al respecto sea presentada por las partes, *deberá ser una fundada en prueba convincente y satisfactoria.*([15]) Dicha determinación, naturalmente, es-

---

([15]) Los foros de instancia deberán mantener bien presente que la norma hoy establecida *no* constituye "carta blanca" para aquellos convictos que, habiendo en su momento decidido, en forma informada, inteligente y voluntaria, no apelar de las sentencias que le fueron impuestas, se han "arrepentido" de dicha decisión y ahora pretendan apelar de las mismas. Entre otros factores, los tribunales de instancia deben mantener presente que "la moción [bajo la Regla 192.1] no tiene término, sino que puede 'ser presentada en cualquier momento'. No le aplica la doctrina de incuria ('laches'), pero el tribunal puede considerar la tardanza injustificada como un elemento para enjuiciar la buena fe y la credibilidad del promovente cuando se trata de una moción que envuelve una cuestión de hechos, y por la tardanza el gobierno no puede replicar adecuadamente." (Escolio omitido.) Rivé Rivera, *op. cit.* pág. 161.

*tará sujeta a ser revisada, en última instancia, por este Tribunal.*

## IV

Ahora bien, dados los *hechos particulares* del presente caso, resulta totalmente innecesario devolver el mismo al tribunal de instancia para que éste proceda, previa vista a esos efectos, a determinar si el peticionario de epígrafe efectivamente fue privado de su derecho a una adecuada representación legal en la etapa apelativa. Por las razones que expusiéramos en la Parte II, *no* hay duda alguna del hecho de que ello es así ya que resulta meridianamente claro que el peticionario Ortiz Couvertier *expresamente instruyó* a su entonces abogado de récord para que apelara de la sentencia que le fuera impuesta. Tampoco puede haber duda del hecho que, debido a causas ajenas a la voluntad expresa del referido peticionario, dicho abogado radicó el recurso de apelación fuera del término jurisdiccional requerido por nuestro ordenamiento.

En consecuencia, *se dictará sentencia revocatoria de la resolución del tribunal de instancia denegatoria de la moción radicada bajo la Regla 192.1 de Procedimiento Criminal; se deja sin efecto la sentencia impuéstale al peticionario; y se devuelve el caso a dicho foro con instrucciones de que proceda a re-sentenciar al aquí peticionario.*

---

A nuestra manera de ver las cosas, constituye una sabia, y sana, práctica forense de los abogados que se dedican a la práctica de lo criminal el hacer constar para récord y/o en el expediente del caso mediante escrito a esos efectos el hecho de que su cliente, habiendo sido informado de su derecho a apelar, ha decidido no hacerlo. Debe mantenerse presente que el abogado que, instruido por su cliente convicto a nivel de instancia para que apele de la sentencia impuéstale, no radica el escrito de apelación y/o lo radica fuera del término jurisdiccional prescrito por nuestro ordenamiento, podrá ser objeto de sanciones disciplinarias por parte de este Tribunal por violación de los correspondientes cánones de ética que rigen la profesión. A esos efectos, apercibimos al Lcdo. Helión Cruz González para que, en el futuro, sea más diligente en la representación de sus clientes.