per curiam:
El caso de autos nos brinda la oportunidad de resolver si el Tribunal de Apelaciones erró al asumir jurisdicción sobre un Recurso de Apelación presentado por un recluso —un año después de dictada la sentencia condenatoria producto de una alegación de culpabilidad— acogiendo el referido recurso como una moción según la Regla 192.1 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, y trasladándolo al Tribunal de Primera Instancia para su disposición. Recurre ante nos el Procurador General. Veamos los hechos que originan el presente recurso.
HH
El 31 de enero de 2003 el señor Giovanni Román Mártir (señor Román Mártir o acusado), fue denunciado por infringir los Arts. 166, 171 y 180 del Código Penal de 1974, según enmendado, que tipifican los delitos de apropiación ilegal agravada, escalamiento agravado y daño agravado, respectivamente.(1) Además, fue denunciado por violar el Art. 18 de la Ley para la Protección de la Propiedad Vehicular, que tipifica el delito de apropiación ilegal de un vehículo de motor.(2) Específicamente, se le imputó haber penetrado la residencia habitada por la señora Carmen Villafañe Pagán con la intención de cometer el delito de apropiación ilegal, por causar daños a dicha propiedad al entrar forzadamente a ésta, apropiarse ilegalmente de joyas, un vehículo de motor y otros bienes muebles de considerable valor.
El 31 de enero de 2003 se determinó causa probable para el arresto del señor Román Mártir por todos los deli *814 tos imputados. Asimismo, el 14 de abril de 2003, celebrada la vista preliminar que dispone la Regla 23 de Procedimiento Criminal.(3) se determinó causa probable para acusar al señor Román Mártir por todos los delitos imputados.(4)
El Ministerio Público procedió a presentar ante el Tribunal de Primera Instancia las correspondientes acusaciones. Todas alegaban la condición de reincidente habitual del acusado. Específicamente, las acusaciones notificaban que el señor Román Mártir fue convicto y sentenciado los días 5 de noviembre de 1993 y 17 de junio de 1997 por cometer los delitos graves de daños agravados y amenaza a funcionario de justicia, respectivamente, y que las referidas sentencias advinieron finales y firmes en los casos criminales números SP1993G000101 y FJ1997G003507.(5)
El 30 de abril de 2003 el defensor de oficio del acusado presentó una moción de supresión de identificación ante el Tribunal de Primera Instancia.(6) El 23 de julio de 2003 el señor Román Mártir presentó, por derecho propio, una moción en la que solicitó la celebración de una vista, pues ya se había pautado la fecha del juicio y aún no se había dilucidado la moción de supresión de identificación.(7) Además, informó al tribunal que no había podido entrevistarse con su nuevo abogado de oficio, a pesar de que restaban pocos días para la celebración del juicio en su fondo, pautado para el 31 de julio de 2003.(8)
No obstante, previo al juicio, el Ministerio Público y la defensa del acusado negociaron un preacuerdo sobre alegación. El preacuerdo consistió en lo siguiente: el acusado se declararía culpable de todos los delitos imputados, *815 a cambio de lo cual el Ministerio Público se obligaría a eliminar la alegación sobre reincidencia habitual incluida en todas las acusaciones. El tribunal aceptó la alegación preacordada por las partes.
Así las cosas, el 31 de julio de 2003, llamado el caso para juicio en su fondo, compareció en sala, tanto el fiscal como el acusado, asistido de su abogado, licenciado Angel R. Vázquez Cintrón. Luego de leérsele al señor Román Mártir las acusaciones en su contra y después de preguntársele qué alegación hacía, el acusado manifestó que se declaraba culpable en cada uno de los cuatro delitos que se le imputaron. El señor Román Mártir solicitó que se dictara sentencia en su contra en el acto.(9)
A renglón seguido, el Tribunal de Primera Instancia aceptó las declaraciones de culpabilidad del acusado y dictó, en esa misma fecha, cuatro sentencias de culpabilidad, una por cada delito confesado. El tribunal hizo cons-tar en sus sentencias que el señor Román Mártir (en adelante también denominado como el convicto), realizó las alegaciones de culpabilidad voluntariamente, con conocimiento de la naturaleza de los delitos graves imputados y de sus consecuencias.(10)
El Tribunal de Primera Instancia condenó al señor Román Mártir a cumplir las penas siguientes: ocho años de reclusión carcelaria por infringir el Art. 171 del Código Penal, supra; seis años de prisión por violar el Art. 166 del Código Penal, supra; seis años de cárcel por quebrantar el Art. 18 de la Ley para la Protección de la Propiedad Vehicular, supra, y dos años de reclusión carcelaria por infracción al Art. 180 del Código Penal, supra. Dispuso que los años de prisión se cumplieran concurrentemente, y de forma consecutiva con cualquier otra sentencia que el convicto estuviese cumpliendo en ese momento.(11)
El 5 de septiembre de 2003, ya finales y firmes las refe *816 ridas sentencias, el señor Román Mártir presentó ante el Tribunal de Primera Instancia, por derecho propio, una Moción de Rebaja de Sentencia. El 16 de septiembre de 2003 ese tribunal rechazó de plano la moción.(12) El convicto no recurrió de dicha denegatoria.
El 20 de julio de 2004 el señor Román Mártir presentó, también por derecho propio, y esta vez ante el Tribunal de Apelaciones, un Recurso de Apelación. Citamos en su totalidad las exposiciones, alegaciones y súplica que hiciera en este recurso:(13)
Al Honorable Tribunal
Comparece el Peticionario de Epígrafe En Forma Pauperis y Por Derecho Propio y Ante Este Honorable Tribunal De Justicia y Muy Respetuosamente Expone Alega y Solicita.
1) Que el Peticionario se encuentra extinguiendo una sentencia impuesta por el Honorable Tribunal de Bayamón el día 31 de julio de 2003.
2) Que el Peticionario recurre ante este Honorable Circuito de Apelaciones en Apelación a las sentencias impuestas por el Tribunal Superior de Bayamón.
3) Que el Peticionario recurre en Apelación a las sentencias impuestas ya que a este se le violaron sus derechos como acusado y le fue violado el debido proceso de Ley que le cobija en cualquier proceso criminal al que fue sometido.
4) Que el Peticionario solicita de este Honorable Tribunal que le asigne una representación Legal de oficio para que siga con el proceso de Apelación al que este solicita
Por Todo Lo cual Suplica y Apela Al Sentimiento de justicia y Equidad de este Honorable Tribunal de Justicia para que declare Ha Lugar el presente recurso con cualquier otro pronunciamiento que en Derecho proceda.
Respetuosamente sometido (Énfasis suplido.)(14)
El 24 de enero de 2005, el Tribunal de Apelaciones emitió una resolución —archivada en autos copia de su notificación a las partes el 11 de febrero de 2005— en la que reconoció que carecía de jurisdicción para revisar las sen *817 tencias condenatorias que pesaban contra el allí peticionario. Ello porque el denominado Recurso de Apelación se había presentado casi un año después de haber sido dictadas, en circunstancias en que el señor Román Mártir sólo contaba con un término jurisdiccional de treinta días para hacerlo.(15) No obstante, decidió acoger el asunto planteado en el recurso presentado por el recluso como una moción al amparo de la Regla 192.1 de Procedimiento Criminal, infra, y trasladarlo al tribunal sentenciador para que así se atendiera.(16)
Inconforme con dicha determinación, el 14 de marzo de 2005, el Procurador General acudió ante nosotros mediante un recurso de certiorari y señaló los errores siguientes:
I. INCIDIÓ EL TRIBUNAL DE APELACIONES AL ASUMIR JURISDICCIÓN EN EL CASO DE AUTOS, A PESAR DE HABER EXPIRADO YA EL TÉRMINO PROVISTO EN LEY PARA RECURRIR DE LA SENTENCIA.
II. INCIDIÓ EL TRIBUNAL DE APELACIONES AL ACO-GER EL RECURSO DE APELACI[Ó]N DEL RECURRIDO, CUYO TÉRMINO ESTABA PRESCRITO, COMO UNO AL AMPARO DE LA REGLA 192.1 DE PROCEDIMIENTO CRIMINAL, NO OBSTANTE NO CUMPLIR ÉSTE CON NIN-GUNO DE LOS FUNDAMENTOS TAXATIVOS EXIGIDOS POR DICHA REGLA.
III. INCIDIÓ, Y EN CONSECUENCIA ABUSÓ DE SU DISCRECIÓN, EL TRIBUNAL DE APELACIONES, AL ACOGER UN RECURSO A TODAS LUCES IMPROCEDENTE EN DERECHO. ELLO TUVO EL EFECTO DE INFRINGIR EL PRINCIPIO DE CERTEZA O SEGURIDAD JURÍDICA.
Posteriormente, el 27 de abril de 2005, el Procurador General presentó ante nos una Moción en Auxilio de Jurisdicción, en la cual solicitó la paralización de una vista judicial pautada por el Tribunal de Primera Instancia para el 6 de mayo de 2005, a raíz del dictamen del Tribunal de Apelaciones. El 29 de abril de 2005 expedimos el recurso de certiorari.
*818 Con el beneficio de la comparecencia de ambas partes,(17) nos encontramos en posición de resolver.
I—1 H-i
En vista de que los señalamientos de error del Procurador General están íntimamente relacionados, los discutiremos en conjunto.
El Procurador General arguye que el Tribunal de Apelaciones incidió al asumir jurisdicción sobre un Recurso de Apelación presentado casi un año después de dictadas las sentencias condenatorias recurridas.(18)
 A. La Regla 193 de Procedimiento Criminal dis-pone lo siguiente:
Las sentencias finales dictadas en casos criminales originados en el Tribunal de Primera Instancia podrán ser apeladas por el acusado en la forma prescrita por estas reglas. En estos casos el acusado podrá establecer una apelación para ante el Tribunal de Circuito de Apelaciones, excepto en los casos de convicción por alegación de culpabilidad, en los cuales procederá únicamente un recurso de “certiorari”, en cuyo caso el auto será expedido por el Tribunal de Circuito de Apelaciones a su discreción. La solicitud de “certiorari” deberá presentarse dentro de los treinta (30) días siguientes a la fecha en que la sentencia fue dictada. Este término es jurisdiccional. (Énfasis suplido.)(19)
Se deduce de lo aquí citado que el término disponible para presentar un recurso de certiorari para revisar una *819 sentencia condenatoria dictada por alegación de culpabilidad es de carácter fatal o jurisdiccional, treinta días, a partir de la fecha cuando se dictó la sentencia.
No obstante, el señor Román Mártir, convicto y sentenciado por alegación de culpabilidad, presentó su Recurso de Apelación ante el Tribunal de Apelaciones trescientos cincuenta y cinco días después de dictadas las sentencias que le condenaban. Al momento de presentar el denominado Recurso de Apelación, vencido ya el término jurisdiccional de treinta días en cuestión, el Tribunal de Apelaciones carecía de autoridad para considerarlo. Al así reconocerlo en su sentencia, actuó correctamente el referido foro.(20)
No obstante, a pesar de declararse sin jurisdicción en el recurso en alzada presentado por el convicto, el Tribunal de Apelaciones acogió el asunto planteado en él como una moción al amparo de la Regla 192.1 de Procedimiento Criminal, infra, y, acto seguido, lo trasladó al Tribunal de Primera Instancia para que se resolviera allí como una cuestión de jurisdicción original en ese foro.
El Procurador General sostiene ante nos que, al así actuar, el Tribunal de Apelaciones erró, ya que las sentencias condenatorias atacadas por el convicto se dictaron como resultado de su alegación de culpabilidad. Aduce que cuando el señor Román Mártir hizo alegación de culpabilidad, renunció a los derechos constitucionales que invocó ante el tribunal intermedio apelativo.(21) Debemos recordar que en el denominado Recurso de Apelación el convicto alegó que en el foro primario se violentaron sus derechos como acusado y su derecho constitucional a un debido proceso de ley. Arguye, entonces, el Procurador General que, *820 “siendo su sentencia una secuela de una admisión de culpabilidad, el convicto está impedido de invocar estos derechos”.(22)
En la alternativa, el Procurador General alega que el contenido del denominado Recurso de Apelación no cumplió con los fundamentos y exigencias del remedio establecido por la Regla 192.1 de Procedimiento Criminal, infra, y que su acogida, como una moción bajo la referida regla, infringió el principio de certeza y seguridad jurídicas. Veamos.
B. En Pueblo v. Figueroa García, 129 D.P.R. 798 (1992), citando al Tribunal Supremo federal en Brady v. United States, 397 U.S. 742, 748 (1970), expresamos sobre el concepto alegación de culpabilidad (guilty plea) lo siguiente:
“... a guilty plea is a grave and solemn act to be accepted only with care and discernment has long been recognized. Central to the plea and the foundation for entering judgment against the defendant is the defendant’s admission in open court that he committed the acts charged in the indictment. He thus stands as a witness against himself and he is shielded by the Fifth Amendment from being compelled to do so —hence the minimum requirement that his plea be the voluntary expression of his own choice. But the plea is more than an admission of past conduct; it is the defendant’s consent that judgment of conviction may be entered without a trial— a waiver of his right to trial before a jury or a judge. Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.” (Énfasis suprimido.)(23)
Por otro lado, recientemente(24) reiteramos la norma jurisprudencial que establece que, al hacer alegación de culpabilidad, el acusado renuncia a valiosos dere *821 chos constitucionales, entre ellos, el derecho a que se pruebe su culpabilidad más allá de duda razonable, el derecho a un juicio justo, imparcial y público, el derecho a ser juzgado ante un juez o un Jurado, y el derecho a presentar evidencia a su favor y rebatir la evidencia presentada en su contra.
No obstante, hemos establecido que una sentencia dictada a raíz de una alegación de culpabilidad es revisable mediante un recurso de certiorari, librado discrecionalmente, para examinar un ataque a la suficiencia de la acusación o a la jurisdicción del tribunal sentenciador, y para plantear alguna irregularidad en el pronunciamiento de la sentencia.(25) Hemos expresado que porque un acusado haya sido convicto mediante una alegación de culpabilidad, no impide que éste ataque directamente la validez de la alegación cuando es el resultado de una coacción o cuando un tribunal incumple con su deber de investigar asuntos que requiere la Constitución o la ley. Asimismo, hemos señalado que un convicto por alegación de culpabilidad puede impugnar colateralmente su sentencia si no fue producto de una decisión inteligente.(26)
Aunque ciertamente hemos resuelto que al hacerse alegación de culpabilidad se renuncia a valiosos derechos constitucionales relacionados, esencialmente, con el acto del juicio, y consustanciales con el derecho constitucional a un debido proceso de ley, bajo ninguna circunstancia puede interpretarse que tal alegación implica una renuncia total a éste último. No puede ser de otra manera, pues la cláusula del debido proceso de ley, consagrada en la See. 7 de la Carta de Derechos de la Constitución de Puerto Rico,(27) ha sido denominada como la disposición matriz de *822 la garantía de los derechos individuales ante la intervención injustificada del Estado con el ciudadano.(28) Dicho de otra forma, el derecho constitucional a un debido proceso de ley representa la garantía fundamental de protección que tiene un ciudadano contra los posibles abusos o usos arbitrarios de poder que haga el Estado, y constituye la máxima garantía de la aspirada justicia plena e imparcial. Es responsabilidad de esta Curia proteger el derecho constitucional a un debido proceso de ley como una de las columnas en que se erige nuestro sistema de justicia.
Así las cosas, un ciudadano convicto mediante alegación de culpabilidad podría atacar dicha convicción, y la sentencia dictada en conformidad, si cuenta con un planteamiento o defensa meritoria de debido proceso de ley. Podría hacerlo directamente, a través del recurso de certiorari correspondiente, o colateralmente, a través de procedimientos posteriores a la sentencia, perfeccionados conforme a derecho, tales como la moción según la Regla 192.1 de Procedimiento Criminal, infra, y el recurso de habeas corpus. Todo planteamiento o defensa de este tipo deberá estar debidamente acreditada y fundamentada en el recurso o la moción presentada. Enfatizamos que si se tratara de un ataque colateral a la sentencia, deberá conformarse estrictamente a los fundamentos, las condiciones, las circunstancias, los planteamientos y las normas de derecho que gobiernan el procedimiento, el recurso, el mecanismo o la moción presentada a esos fines.
En vista de lo anterior, no le asiste la razón al Procurador General cuando con sus argumentos ante nos pretende implicar que, al hacer alegación de culpabilidad, el señor Román Mártir renunció a todo planteamiento o defensa apuntalada en el derecho constitucional a un debido proceso de ley.
Ahora bien, descartada la procedencia de un ataque directo a las sentencias condenatorias en controversia me *823 ¿liante el recurso de certiorari, por ausencia de jurisdicción, debemos evaluar si el contenido del denominado Recurso de Apelación, presentado por el convicto ante el Tribunal de Apelaciones, cumplió con la Regla 192.1 de Procedimiento Criminal, infra. Ello con el objetivo de determinar si dicho foro actuó con corrección jurídica al (1) acoger el asunto planteado en él como una moción según la referida regla, y (2) remitirlo al tribunal sentenciador para su disposición.
C. La Regla 192.1 de Procedimiento Criminal (Regla 192.1) autoriza a cualquier persona que se encuentre detenida por sentencia condenatoria a presentar una moción en la sede del Tribunal de Primera Instancia que la dictó —para que se anule, deje sin efecto o corrija— en circunstancias en que se alegue el derecho a ser puesto en libertad por cualquiera de los fundamentos siguientes:
(1) La sentencia fue impuesta en violación de la Constitución o las leyes del Estado Libre Asociado de Puerto Rico o la Constitución y las leyes de Estados Unidos; o
(2) el tribunal no tenía jurisdicción para imponer dicha sentencia; o
(3) la sentencia impuesta excede de la pena prescrita por la ley, o
(4) la sentencia está sujeta a ataque colateral por cualquier motivo ....(29)
La moción en cuestión se puede presentar ante el tribunal sentenciador en cualquier momento, después de dictada la sentencia, incluso cuando ésta haya advenido final y firme.(30) La referida Regla 192.1 requiere que se incluyan en la moción todos los fundamentos que tenga el peticionario para solicitar el remedio que ella provea. Sobre este particular, la referida norma procesal establece que se considerarán renunciados los fundamentos no incluidos en la moción, excepto que el tribunal, con fundamento en un *824 escrito subsiguiente, determine que no pudieron razonablemente presentarse en la moción original.(31)
El mecanismo procesal provisto por la citada Regla 192.1 se puede utilizar para atacar colateralmente la validez o constitucionalidad de una sentencia criminal final y firme cuando el convicto está cumpliendo prisión por ésta.(32) Los fundamentos para solicitar la revisión de una sentencia bajo este mecanismo se limitan a planteamientos de derecho, por lo que no puede ser utilizado para revisar señalamientos sobre errores de hecho.(33) La culpabilidad o inocencia del convicto no es asunto susceptible de plantearse bajo este procedimiento, sino la cuestión de si la sentencia impugnada está viciada por un error fundamental que contradice la noción más básica y elemental de lo que constituye un procedimiento criminal justo.(34)
Una moción al amparo de esta Regla 192.1 procederá cuando la sentencia dictada sea contraria a la ley o viole algún precepto constitucional, haya sido dictada sin jurisdicción, exceda la pena prescrita por la ley o esté sujeta a un ataque colateral por un fundamento válido. El Tribunal de Primera Instancia podrá, discrecionalmente, dejar sin efecto la sentencia, ordenar la excarcelación del convicto y su puesta en libertad, dictar nueva sentencia o conceder un nuevo juicio, según proceda.(35)
Expuesta la normativa de derecho anterior, procedemos a aplicarla a los hechos particulares del caso de marras.
Según se deduce del denominado Recurso de Apelación, presentado por el señor Román Mártir ante el Tribunal de *825 Apelaciones, éste se limitó a alegar en él que “se le violaron sus derechos como acusado y le fue violado el debido proceso de ley”. En esa única, llana y escueta afirmación descansó el convicto para atacar su convicción y sentencia ante el foro intermedio apelativo.
En una comparecencia en forma de Moción de Absolución Perentoria, que por derecho propio presentó en nuestra Secretaría, el señor Román Mártir alegó que
... fue víctima de[l] Tribunal de Justicia donde sus derechos como acusado fueron violados en urna forma sin precedentes ya que este [sic] fue acusado con un coautor que el Tribunal le desestimó los cargos sin [el coautor] tener representación legal, en un caso en donde [sic] el peticionario [sic] y coacusado fueron sorprendidos montándose en un vehículo que había sido hurtado en Bayamón. (Énfasis suplido.)(36)
Adujo, además, que el Tribunal de Primera Instancia
... actuó con pasión, prejuicio y parcialidad en contra del peticionario [sic] y favoreciendo al coacusado el día 23 de abril de 2003, entiéndase que el coacusado tiene un pariente una [sic] tía que labora en el Tribunal de Bayamón, entiéndase que éste [coautor] sin una representación legal que [sic] fue absuelto por dicho juez.(37)
Terminó solicitando en su moción,
... muy respetuosamente absolución perentoria en estos casos ya que el Tribunal de Primera Instancia de Bayamón incidió y en consecuencia abuso [sic] de su discreción a todas luces improcedente en derecho. Lo cual tuvo el efecto de infringir el principio de la certeza y seguridad jurídica. (Énfasis suprimido.)(38)
En una comparecencia subsiguiente, el convicto nos señaló que “fue Acusado de unos delitos d[ó]nde al coacusado *826 el tribunal le desestimó los cargos [sic] dejando los cargos al Peticionario”.(39)
Las expresiones citadas no fueron hechas por el señor Román Mártir al Tribunal de Apelaciones. Pero, aun si hiciéramos abstracción de ese hecho, como hemos apreciado, representan el mejor ejemplo de aserciones inmeritorias, flacas, descarnadas y carentes de fundamento. La aseveración hecha ante el Tribunal de Apelaciones de que el foro primario le violó sus derechos como acusado y el derecho constitucional a un debido proceso de ley, sin apoyarla allí con datos y argumentos concretos, fue claramente insuficiente para justificar acoger el denominado Recurso de Apelación como una moción según la Regla 192.1. El convicto ni remotamente cumplió con las exigencias de la referida regla. Ésta le requería que incluyera todos los fundamentos que a bien tuviera para solicitar un remedio. No obstante, el señor Román Mártir no esbozó ninguno.
Coincidimos con la profesora Dora Nevares-Muñiz, quien al interpretar la Regla 192.1 comenta, y así lo resolvemos, que si de su faz la moción presentada a su amparo no demuestra que el peticionario tiene derecho a algún remedio, deberá ser rechazada de plano.(40) Si es inmeritoria de su faz, lo procedente es declararla Sin Lugar, sin ulterior trámite. Ya que el procedimiento provisto por la referida regla es de naturaleza civil, semejante al recurso de habeas corpus, separado e independiente del procedimiento criminal cuya sentencia se impugna, es el peticionario quien tiene el peso de la prueba para demostrar que tiene derecho al remedio solicitado.(41) Le corresponde en primera instancia al recluso, mediante la presentación de la moción, poner al tribunal en condiciones de resolver, a través de datos y argumentos de derecho concretos, que es imperiosa la celebración de una vista para *827 atender sus fundados planteamientos constitucionales, o de ausencia de jurisdicción, o de ilegalidad de la pena impuesta, de acuerdo con la concernida regla.
En el presente caso, las cuatro acusaciones que pesaban contra el señor Román Mártir alegaban su condición de reincidente habitual. Esto implicaba que de resultar culpable en juicio, se exponía a una condena de separación permanente de la sociedad, esto es, reclusión perpetuad.(42) Producto de sus alegaciones de culpabilidad —preacordadas con el Ministerio Público y aceptadas por el Tribunal de Primera Instancia— se eliminaron de los pliegos acusatorios las alegaciones sobre reincidencia habitual. El señor Román Mártir se benefició claramente de ello: obtuvo una condena de sólo ocho años de prisión.
Las sentencias condenatorias dictadas demuestran que el convicto, en conformidad con la Regla 70 de Procedimiento Criminal,(43) fue examinado bajo juramento por el Tribunal de Primera Instancia, luego de lo cual realizó las alegaciones de culpabilidad, voluntariamente, con conocimiento de la naturaleza de los delitos graves imputados y de sus consecuencias. Incluso, surge de las referidas sentencias que el señor Román Mártir solicitó al tribunal que lo sentenciara en el acto. El convicto no trajo a la atención del Tribunal de Apelaciones fundamento alguno que demostrara que al dictarse las sentencias en controversia el foro primario actuó inconstitucionalmente, sin jurisdicción o excediendo la pena prescrita en la ley. Tampoco realizó un ataque colateral contra ellas por un motivo válido. Sencillamente, el señor Román Mártir no planteó ante el foro intermedio apelativo una legítima controversia de derecho que justificara la concesión de algún remedio según la Regla 192.1.
No podemos perder de perspectiva que el proceso de impartir justicia incluye la debida protección del principio de finalidad de los procedimientos penales. Por tener como *828 objetivo lograr la revocación de convicciones y sentencias finales y firmes, la Regla 192.1 debe ser vista por los tribunales como una regla de naturaleza excepcional. Así, las mociones a su amparo se deben examinar con gran cuidado, desplegándose en todo momento un juicioso y responsable ejercicio de discreción. Recordemos que es imperativo que los convictos de delito presenten en procedimientos apelativos todos los fundamentos que a bien tengan para atacar sus fallos condenatorios y sentencias. Nos corresponde desalentar que éstos levanten dichos fundamentos en procedimientos posteriores colaterales, máxime si, como en el presente caso, se esgrimen argumentos infundados y peregrinos. No debemos alimentar la congestión de nuestros tribunales con recursos inmeritorios de reclusos que tienen como propósito permanecer en el foro judicial atacando colateralmente sentencias no apeladas o infructuosamente apeladas en un esfuerzo de revocar veredictos, fallos o sentencias de culpabilidad finales y firmes.
HH FH h—I
Por los fundamentos antes expuestos, resolvemos que erró el Tribunal de Apelaciones al acoger el denominado Recurso de Apelación, presentado por el señor Román Mártir, como una moción al amparo de la Regla 192.1 y remitirlo al Tribunal de Primera Instancia para su dilucidación.(44) Debió, sin más, desestimar el recurso del convicto por falta de jurisdicción.
En virtud de lo que aquí resolvemos, procede revocar la resolución del Tribunal de Apelaciones y desestimar el denominado Recurso de Apelación presentado por el convicto.

*829
Se dictará sentencia de conformidad.

El Juez Asociado Señor Fuster Berlingeri y la Juez Asociada Señora Rodríguez Rodríguez concurrieron sin opinión escrita.

 33 L.P.R.A. ants. sees. 4272, 4277 y 4286.

 9 L.P.R.A. see. 3217.

 34 L.P.R.A. Ap. II.

 Apéndice del recurso de certiorari, pág. 5.

 íd., págs. 6-9.

 íd., pág. 23.

 íd.

 íd., págs. 23-24.

 íd., págs. 10-13.

 íd.

 íd.

 íd., pág. 24.

 Por ser innumerables los errores gramaticales que contiene el escrito del convicto y para no obstaculizar irrazonablemente la lectura, hemos optado por no identificarlos.

 Apéndice del Recurso de certiorari, págs. 17-19.

 íd., pág. 24.

 íd., págs. 22 y 25.

 El convicto, Sr. Giovanni Román Mártir, compareció por derecho propio. En el ejercicio de nuestra discreción, le concedimos un término para que compareciera, además, a través de un abogado de oficio. Debemos puntualizar que recientemente reiteramos la norma de que aunque un convicto indigente tiene un derecho constitucional a que se le nombre un abogado de oficio para la presentación de una primera apelación, esto no se extiende a la presentación de recursos discrecionales o ataques colaterales a una convicción. Pueblo v. Rivera, 167 D.P.R. 812 (2006).

 Alegato del Procurador General, pág. 4. Según indicamos en la relación de hechos que antecede, las sentencias de culpabilidad del aquí recurrido se dictaron el 31 de julio de 2003, mientras que el Recurso de Apelación se presentó ante el Tribunal de Apelaciones el 20 de julio de 2004.

 34 L.P.R.A. Ap. II.

 Es menester destacar que el convicto debió designar su escrito como Recurso de certiorari. No obstante, es norma antigua que el nombre con que se designa un recurso no determina su naturaleza ni debe ser decisivo desde el punto de vista de la función de hacer justicia, por lo que los tribunales deben hacer caso omiso de los nombres o títulos mal puestos en los recursos y considerarlos como corresponda. Correa Negrón v. Pueblo, 104 D.P.R. 286, 293 (1975), y casos allí citados.

 Alegato del Procurador General, págs. 3-4.

 íd.

 Pueblo v. Figueroa García, supra, pág. 804.

 Pueblo v. Montero, 169 D.P.R. [wc 7051] (2006). Véanse, además: Pueblo v. Figueroa García, supra, pág. 807; Pueblo v. Torres Nieves, 105 D.P.R. 340, 350 (1976); Díaz Díaz v. Alcaide, 101 D.P.R. 846, 854 (1973).

 Pueblo v. Santiago Agricourt, 147 D.P.R. 179, 210 (1998); Pueblo v. Pueblo International, 106 D.P.R. 202, 208 (1977).

 Pueblo v. Santiago Agricourt, supra, págs. 210-211.

 Esta sección dispone, en lo aquí pertinente, que
“[n]inguna persona será privada de su libertad o propiedad sin debido proceso de ley ....’’Art. II, Sec. 7 de la Carta de Derechos, Const. E.L.A., L.P.R.A., Tomo 1, ed. 1999, pág. 280.

 Pueblo v. Montero, supra; Pueblo v. Vega, 148 D.P.R. 980 (1999).

 34 L.P.R.A. Ap. II.

 íd.; D. Nevares-Muñiz, Sumario de derecho procesal penal puertorriqueño, 7ma ed. rev., San Juan, Ed. Inst. Desarrollo del Derecho, 2004, Sec. 15.5, pág. 221.

 Regla 192.1 de Procedimiento Criminal, supra.

 Pueblo v. Ortiz Couvertier, 132 D.P.R. 883, 896 (1993); Correa Negrón v. Pueblo, supra.

 Pueblo v. Ortiz Couvertier, supra; Pueblo v. Ruiz Torres, 127 D.P.R. 612, 615 (1990). Véase, además, Nevares-Muñiz, op. cit., pág. 221.

 D. Rivé Rivera, Recursos Extraordinarios, 2da ed. rev., San Juan, Programa Educación Jurídica Continua, Universidad Interamericana de Puerto Rico, Facultad Derecho, 1996, pág. 185.

 Pueblo v. Ortiz Couvertier, supra, pág. 893; Pueblo v. Ruiz Torres, supra, pág. 614. Véase, además, Rivé Rivera, op. cit., pág. 181.

 Moción de Absolución Perentoria, pág. 2, presentada por el convicto en nuestra Secretaría el 12 de agosto de 2005.

 íd.

 íd., pág. 3.

 Moción intitulada presentada en nuestra Secretaría por el señor Román Mártir el 31 de octubre de 2005, pág. 2.

 Nevares-Muñiz, op. cit., pág. 221.

 Rivé Rivera, op. cit., págs. 190-191.

 Art. 62 del Código Penal de 1974 (33 L.P.R.A. ant. see. 3302).

 34 L.P.R.A. Ap. II.

 Queremos acentuar que la competencia para resolver una moción bajo la Regla 192.1 es del tribunal sentenciador. Si el Recurso de Apelación del convicto hubiese cumplido con las exigencias de la moción regulada por la referida regla procesal criminal, la actuación del Tribunal de Apelaciones hubiera sido jurídicamente correcta. Nótese que dicho foro no dilucidó la moción (el Recurso de Apelación), sino que, en obediencia a la referida norma de competencia, lo remitió a tales fines al Tribunal de Primera Instancia.