EL PUEBLO DE PUERTO RICO, apelado, *v.* JOSÉ BLADIMIR FERNÁNDEZ SIMONO y DIAMELIA L. FIGUEROA DÍAZ, acusados y apelantes.

*Número:* CR-94-41          *Resuelto:* 2 de abril de 1996

*Santiago Guzmán Esquilín*, abogado de la parte apelante; *Carlos Lugo Fiol, Procurador General, Jacqueline Novas Debién, Subprocuradora General, y Grisel Hernández Esteves, Procuradora General Auxiliar*, abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

Los apelantes —Diamelia L. Figueroa Díaz y su esposo José B. Fernández Simono— fueron acusados por el Ministerio Fiscal, ante el antiguo Tribunal Superior de Puerto Rico, Sala de San Juan, de alegadamente haber infringido tanto las disposiciones del Art. 271 como del Art. 272 del vigente Código Penal de Puerto Rico,[1] esto es, de falsificación de documentos y de posesión y traspaso de documentos falsificados.

El juzgador de los hechos —un jurado— rindió veredicto condenatorio, en ambos cargos, contra la coacusada Figueroa Díaz y, en relación con el coacusado Fernández Simono, únicamente por infracción al citado Art. 272 del Código Penal, 33 L.P.R.A. sec. 4592. En vista a ello, el foro de instancia condenó, a ambos convictos, a sufrir una pena de seis (6) años de presidio bajo el régimen de la Ley de Sentencia Suspendida.

Inconformes, Fernández Simono y su esposa Figueroa Díaz apelaron ante este Tribunal, imputándole al foro de instancia haber errado:

1. ... al no permitirle a los acusados una adecuada representación legal en violación a la garantía constitucional sobre el de-

---

[1] 33 L.P.R.A. secs. 4591 y 4592.

recho a asistencia de abogado consagrada en la VI Enmienda Federal y en el Artículo II, Sección 11 de la Constitución de Puerto Rico cuando dicho abogado no había orientado a los acusados; no se había reunido con ellos; no hizo descubrimiento de prueba de clase alguna; no se preparó adecuadamente para el juicio; no aceptó los testigos de defensa propuestos por los acusados; estuvo ausente en varias ocasiones siendo objeto de la imposición de varios desacatos y alimentó esperanzas en los acusados prometiendo que todo iba a salir bien.

2. ... al no absolver a los acusados mediante la absolución perentoria, a tenor con la Regla 135 de las de Procedimiento Criminal, debido a que consideró la prueba del Ministerio Público insuficiente a los fines de establecer una convicción.

3. ... al permitir una defensa pro forma en perjuicio de ambos apelantes lo cual resultó en la convicción de ambos aún con insuficiencia de prueba.

4. ... al no paralizar los procedimientos y brindar la oportunidad de un juicio justo e imparcial de ambos apelantes al considerar insuficiente la prueba contra ambos imputados apelantes privándoles de un debido procedimiento de ley.

5. ... al compeler a un abogado a entrar a juicio en perjuicio de su representado cuando por experiencia el Honorable Magistrado debió percatarse de que el abogado no estaba en condiciones físicas ni mentales para asumir la representación profesional y entrar a juicio sin estar preparado resultando esto en perjuicio del debido procedimiento de ley que garantiza la Constitución a los imputados convictos y que como resultado era de preverse la convicción de la cual se apela. Alegato del Procurador General, págs. 3–4.

Estando en condiciones de resolver el recurso, procedemos a así hacerlo.

## I

Por entenderlo correcto, y completo, a continuación transcribimos el resumen que de la prueba desfilada a nivel de instancia hace el Procurador General de Puerto Rico en el informe que nos sometiera.

La Sra. Marta Wilson Rexach conocía a Diamelia L. Figueroa desde hacía tiempo. La trataba como una hija de la casa. También conocía a su esposo José B. Fernández Simono. (E.N.P., pág. 1).

Diamelia la visitó en agosto de 1991 y le solicitó su firma para adquirir un vehículo de motor a su nombre, pues ella tenía el crédito dañado. Doña Marta le respondió que no había problema. Procedió a entregarle una tarjeta de identificación y un talonario como evidencia de la cantidad de dinero que ella devengaba como salario de su trabajo.

Más tarde, recibió una llamada de un "dealer" de vehículos de motor. Le preguntaron sobre sus ingresos para llenar la solicitud de préstamo para la compra de un vehículo. Ella brindó la información. (E.N.P., pág. 1). Le informaron además, que tan pronto estuviera el préstamo aprobado la llamarían para que compareciera a firmar los documentos, lo cual nunca ocurrió.

Transcurridas varias semanas, recibió una llamada del Banco First Federal. Le indicaron que le habían enviado por correo una libreta de pagos para el pago del préstamo del automóvil y que la libreta había sido devuelta por dirección errónea. (E.N.P., pág. 2). Ella procedió a corregir la dirección y al recibir la libreta se comunicó con Diamelia L. Figueroa para que pasara a recogerla. Luego decidió enviarla con su hija. (E.N.P., pág. 2).

Semanas más tarde recibió notificación de que el préstamo estaba atrasado. Procedió a llamar a Diamelia para informarle de la notificación del banco. Esta le contestó que el vehículo se encontraba en un taller para reparaciones. (E.N.P., pág. 2). Doña Marta llamó a la señora Figueroa en varias ocasiones, porque no quería recibir más llamadas del banco. Cuando la llamaban del banco ella les daba excusas por la tardanza en los pagos. (E.N.P., pág. 3).

Más tarde se enteró de que Diamelia y su esposo habían vendido el vehículo a una señora de nombre Marta Jiménez. Los pagos seguían atrasados. Llamó a Marta Jiménez y ésta le indicó que le entregaría el vehículo si le pagaba seiscientos dólares ($600.00) de una reparación que ella le hizo a la transmisión. La señora Wilson le respondió que no iba a pagar ningún dinero y que reportaría el caso a la policía. (E.N.P., pág. 2).

El 13 de julio de 1992 la señora Wilson presentó querella en el cuartel de la Policía. Sus relaciones personales con Diamelia Figueroa y su esposo se afectaron luego de esto. (E.N.P., pág. 4).

El Sargento Díaz Carrillo inició la investigación pertinente. Entrevistó a Diamelia Figueroa el 17 de julio de 1992, después de hacerle las advertencias legales y entregarle el Formulario de Lectura de Derechos, el cual ella firmó. (E.N.P., pág. 4).

El Sargento Díaz Carrillo le informó que ella era sospechosa de haber falsificado la firma de la señora Wilson. Ella le indicó que era cierto, que ella había firmado los documentos, pero que

Wilson la había autorizado a hacerlo. Le dijo que habían vendido el vehículo y el Sargento procedió a ocuparlo para investigación. (E.N.P., pág. 4).

Posteriormente, el Sargento localizó al esposo de Diamelia Figueroa. Después de hacerle las advertencias legales pertinentes, éste le admitió que estuvo presente en la transacción, que Diamelia firmó los documentos, que ambos utilizaron el vehículo y lo vendieron a Marta Jiménez. (E.N.P., pág. 4). Alegato del Procurador General, págs. 2–3.

En vista de estos hechos, como expresáramos anteriormente, el Ministerio Público le imputó al matrimonio mencionado haber infringido las disposiciones del Art. 271 del Código Penal, 33 L.P.R.A. sec. 4591; *esto es*, y en síntesis y en lo pertinente, que actuando en concierto y común acuerdo —y *"con la intención de defraudar al Banco First Federal Savings"*— "hicieron en todas sus partes un documento o escrito falso", a saber un documento de compraventa de un vehículo, *falsificando* la firma de la Sra. Marta Wilson Rexach.

En relación con el pliego acusatorio por infracción a las disposiciones del Art. 272 del Código Penal, ante, el Estado les imputó a ambos acusados, en síntesis y en lo pertinente, que "poseyeron, usaron, circularon y/o pasaron como genuinos y verdaderos" —y *"con la intención de defraudar al Banco First Federal Savings"*— documentos de compraventa de un vehículo de motor "a sabiendas y con el conocimiento de que dichos documentos eran falsos, falsificados y/o imitados".

## II

■ En cuanto al *primer* señalamiento de error —falta de adecuada representación legal— sabido es que el derecho de todo acusado a una adecuada asistencia de abogado está garantizado por la Sec. 11 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1. La *violación* a este derecho, no hay duda, conlleva la revocación de la convicción decretada a nivel de instan-

cia y la celebración de un nuevo proceso. *Pueblo v. Ríos Maldonado*, 132 D.P.R. 146 (1992).

▆ Ahora bien, recae sobre el apelante, que alega no haber tenido una adecuada representación legal a nivel de instancia, el peso de la prueba a esos efectos. *Pueblo v. Torres*, 81 D.P.R. 678, 684 (1960). Por otro lado, la incompetencia profesional a nivel de instancia, la cual conlleva la revocación de la convicción, debe ser de tal grado que se pueda sostener, de manera razonable, la probabilidad de que el resultado del proceso criminal, a no ser por dicha incompetencia, con toda probabilidad hubiese sido otro. *Pueblo v. Marrero Laffosse*, 95 D.P.R. 186 (1967); *Pueblo v. Ríos Maldonado*, ante.

▆ Por último, en cuanto a este aspecto, debe mantenerse presente que hemos resuelto que, a nivel apelativo, existe una "presunción" a los efectos de que la representación legal, a nivel de instancia, fue una adecuada y satisfactoria. *Pueblo v. Morales Suárez*, 117 D.P.R. 497, 501 (1986); *Pueblo v. López Guzmán*, 131 D.P.R. 867 (1992).

Señala, en su alegato, la nueva representación legal del matrimonio apelante —como ejemplos de la ausencia de adecuada representación legal a nivel de instancia— que el entonces abogado de los apelantes "no hizo descubrimiento de prueba" y "no se reunió" suficientemente con los apelantes antes del juicio. En cuanto al primer señalamiento, *sin embargo, no* se nos informa, *ni* especifica, qué prueba debió descubrirse, si alguna, *ni* qué daño sufrieron los apelantes por ello. En relación con el segundo de los señalamientos, por otro lado, *no* se expresa el número de ocasiones en que el abogado efectivamente se reunió con sus clientes y el por qué debió de reunirse más con éstos.

En otras palabras, se pretende que revoquemos "en el vacío" unas convicciones, decretadas a nivel de instancia luego de la celebración de un juicio por jurado; esto es, que dejemos sin efecto las convicciones decretadas por el Jurado de manera especulativa. Por otro lado, un examen de

la exposición narrativa de la prueba demuestra que la actuación del abogado que representó a los apelantes a nivel de instancia fue una adecuada. Esto es, *no* se ha traído ante nuestra consideración evidencia que derrote la "presunción" a los efectos de que la actuación del abogado fue una que no debe conllevar la revocación de las convicciones. *Pueblo v. Morales Suárez*, ante; *Pueblo v. López Guzmán*, ante.

Lo expuesto dispone, igualmente, de los señalamientos de error tercero y quinto, los cuales también versan sobre la alegada ausencia de adecuada representación legal a nivel de instancia.

## III

Mediante los señalamientos de error segundo y cuarto, plantea la representación legal de los apelantes que la prueba, presentada por el Estado a nivel de instancia, fue una "insuficiente en derecho" y que, en consecuencia, erró el foro de instancia al no absolver a éstos de manera perentoria. Dichos señalamientos son inmeritorios.

La prueba presentada por el Ministerio Fiscal, y creída por los señores del Jurado, *claramente demuestra* que la apelante Figueroa Díaz *firmó* la solicitud del préstamo de auto ante el Banco First Federal Savings con el nombre de *otra* persona, la señora Marta Wilson Rexach. La referida apelante alega que, *como contaba con el consentimiento para así hacerlo de la referida Marta Wilson Rexach*, ella no falsificó la firma. *No tiene razón.* El "perjudicado" en la referida transacción *no* es Marta Wilson Rexach. *Ésta, de hecho, pudo haber sido acusada de los mismos delitos por los que fueron acusados los apelantes*; ello por razón de haber participado, junto a los apelantes, en el plan para defraudar al Banco.

El verdadero "perjudicado" —*y así se alegó en los pliegos acusatorios radicados*— lo fue el Banco First Federal Sa-

vings, *el cual fue víctima de un esquema fraudulento por parte de Marta Wilson Rexach y de los apelantes*; ello en vista de que fue inducido a conceder un préstamo a unas personas a quienes *no* le hubiera aprobado el mismo por razón del pobre récord de crédito que éstos tenían.

■ El *elemento esencial* en el citado Art. 271 del Código Penal lo es *la intención de defraudar.* Dicha disposición estatutaria contempla *dos* (2) modalidades, a saber: (1) hacer en todo, o parcialmente, un documento, instrumento o escrito falso, mediante el cual se creare, transfiriere, terminare o de otra forma afectare cualquier derecho, obligación o interés, y (2) que falsamente alterare, limitare, suprimiere, o destruyere, total o parcialmente, uno verdadero.(²)

■ En el presente caso, la apelante Figueroa Díaz fue acusada, y convicta, por la *primera* modalidad, consistentes los hechos delictivos en firmar, con un nombre que no era el de ella, la solicitud del préstamo de automóviles; *causando su actuación la creación de una relación ficticia entre ella y el banco que afectó un "derecho o interés" de este último.* Por otro lado, debe recordarse que la "intención de defraudar" puede *inferirse* de las circunstancias relacionadas con la comisión de los hechos. *Pueblo v. Flores Betancourt*, 124 D.P.R. 867 (1989). El hecho de que Marta Wilson Rexach autorizara a la apelante Figueroa Díaz a firmar su nombre carece, *repetimos*, totalmente de importancia. El perjudicado por dicha actuación lo es el Banco, *el cual sufrió el desplazamiento patrimonial y/o pérdida.*

---

(²) "Sec. 4591. *Falsificación de documentos*

"Toda persona que con intención de defraudar a otra hiciere, en todo o en parte, un documento, instrumento o escrito falso, mediante el cual se creare, transfiriere, terminare o de otra forma afectare cualquier derecho, obligación o interés, o que falsamente alterare, limitare, suprimiere o destruyere, total o parcialmente, uno verdadero, será sancionada con pena de reclusión por un término fijo de nueve (9) años. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de catorce (14) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de seis (6) años." 33 L.P.R.A. sec. 4591.

*La situación de hechos que presenta el caso de autos es completamente distinguible de la que tuvimos ante nuestra consideración en el caso de Pueblo v. Burgos Torres,* 120 D.P.R. 709 (1988); caso que, curiosamente, ninguna de las partes discute en sus respéctivas comparecencias o alegatos.

En *Pueblo v. Burgos Torres,* ante, el allí imputado, *utilizando su propio nombre o identidad,* brindó información falsa, respecto a un automóvil de su propiedad, a un banco y a una compañía de seguros con el propósito de defraudar a estas instituciones. Resolvimos en dicho caso de manera mayoritaria, en síntesis y en lo pertinente, que dicho acusado, *al brindar información falsa,* había incurrido en lo que la doctrina califica como "falsedad ideológica", situación que no está contemplada, o penalizada, por las disposiciones del citado Art. 271 del Código Penal.

En el *presente* caso, *por el contrario,* la información —datos personales— *que al banco le brinda la apelante Figueroa Díaz, sobre la persona de Marta Wilson Rexach, es verídica.* El delito de falsificación lo comete Figueroa Díaz, *sin embargo,* cuando firma la solicitud de préstamo con el nombre de Marta Wilson Rexach; *ésto es, cuando falsifica ante el banco —con el propósito de defraudar a éste— la firma de dicha persona real,* lo cual causa que dicho documento sea uno "falso". *Pueblo v. Flores Betancourt,* ante, pág. 882.

Atendido lo anteriormente expuesto, la conclusión es la misma en cuanto a la infracción, de parte de los apelantes, de las disposiciones del citado Art. 272 del Código Penal.[3]

[3] "Sec. 4592. *Posesión y traspaso de documentos falsificados*

"Toda persona que con intención de defraudar a otra posea, use, circule, venda, pase o trate de pasar como genuino o verdadero cualquier documento, instrumento o escrito de los especificados en la sección anterior a sabiendas de que los mismos son falsos, alterados, falsificados o imitados, será sancionada con pena de reclusión por un término fijo de nueve (9) años. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta una máximo de catorce (14) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de seis (6) años." 33

La prueba demostró, más allá de duda razonable, que los apelantes vendieron o traspasaron el automóvil que fraudulentamente habían adquirido a sabiendas de que los documentos de compra del auto —o el título del mismo— eran fraudulentos o falsos. Procede, por ende, igualmente la confirmación de las convicciones decretadas por dicho delito a nivel de instancia.

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Fuster Berlingeri concurrió con el resultado sin opinión escrita.