EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Benito Arroyo Rodríguez<br><br>Peticionario | Certiorari<br><br>2021 TSPR 159<br><br>208 DPR _____ |
| --- | --- |

Número del Caso: CC-2019-768

Fecha: 23 de diciembre de 2021

Tribunal de Apelaciones:

    Panel V

Abogado de la parte peticionaria:

    Lcdo. Jesús Miranda Díaz

Oficina del Procurador General:

    Lcdo. Isaías Sánchez Báez
    Procurador General

    Lcda. Liza M. Delgado González
    Procuradora General Auxiliar

Materia: Sentencia con Opinión disidente

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Benito Arroyo Rodríguez<br><br>Peticionario | CC-2019-0768 | *Certiorari* |

SENTENCIA

En San Juan, Puerto Rico, a 23 de diciembre de 2021.

Nos corresponde determinar la procedencia de una Moción de Resentencia al amparo de la Regla 192.1 de Procedimiento Criminal, *infra*, bajo el fundamento de representación legal inadecuada. Por las razones que expondremos, resolvemos que procedía declarar No Ha Lugar la moción en cuestión, pues no se cumplió con el estándar de prueba requerido para fundamentar una moción bajo la Regla 192.1 de Procedimiento Criminal, *infra*. En consecuencia, confirmamos el dictamen emitido por el Tribunal de Apelaciones.

I

El 22 de septiembre de 2015, el Sr. Benito Arroyo Rodríguez (peticionario) fue sentenciado a cumplir veintiséis (26) años de cárcel por infracción al Art. 133 (a) del Código Penal de Puerto Rico, 33 LPRA sec. 5194(a) (actos lascivos).

Inconforme con el fallo condenatorio, el 13 de octubre de 2015, el peticionario acudió ante el Tribunal de Apelaciones mediante un recurso de apelación, y señaló varios errores en torno a la evaluación de la prueba.

Ante un cuadro fáctico de incumplimientos reiterados, el 22 de junio de 2016, el Tribunal de Apelaciones desestimó el recurso de apelación instado por el peticionario por abandono y falta de interés, al no presentarse la transcripción de la prueba oral según fue ordenado en múltiples ocasiones. Concluyó que la parte peticionaria había incurrido en una situación extrema de abandono, desinterés y falta de diligencia tanto con las órdenes del tribunal como para el perfeccionamiento del recurso por un espacio de más de ocho (8) meses y luego de siete (7) Resoluciones emitidas. Cabe señalar que, ante el incumplimiento con las órdenes emitidas, el foro apelativo intermedio ordenó en dos (2) ocasiones que se le notificara personalmente al señor Arroyo Rodríguez en la institución penal correspondiente de los incumplimientos acaecidos y, además, se le apercibió de que ello podría conllevar la desestimación del recurso.

Casi tres (3) años después, el 30 de mayo de 2019, el señor Arroyo Rodríguez compareció nuevamente al Tribunal de Primera Instancia y presentó una *Moción Solicitando Resentencia al Amparo de la Regla 192.1 de Procedimiento Criminal*. En síntesis, argumentó que no tuvo una

representación legal adecuada en el proceso de apelación, ya que, por razón desconocida, el representante legal del peticionario en aquel momento ignoró siete (7) órdenes del foro apelativo intermedio para presentar la transcripción de la prueba testifical del caso. Alegó que dicho incumplimiento por parte de su representante legal -no atribuibles a él-ocasionó la desestimación de su apelación e incidió en su debido proceso de ley. Así, solicitó que se le resentenciara con el propósito de que se activara un nuevo término de treinta (30) días para apelar su convicción. Sin embargo, el 4 de junio de 2019, el foro primario notificó una Orden mediante la cual declaró Sin Lugar la *Moción de Resentencia* presentada por el peticionario.

En desacuerdo, el 19 de junio de 2019, el señor Arroyo Rodríguez solicitó reconsideración. Requirió que se celebrara una vista evidenciaría a los efectos de dilucidar los asuntos relacionados a la inadecuada representación legal y a determinar si se le privó de su derecho a apelar su convicción. Sin embargo, el foro primario denegó la solicitud de reconsideración mediante una Resolución notificada el 15 de julio de 2019.

Inconforme, el 13 de agosto de 2019, el peticionario acudió al Tribunal de Apelaciones mediante un recurso de *certiorari* en el que reiteró sus argumentos previos y sostuvo que el Tribunal de Primera Instancia erró al no celebrar una

vista evidenciaria para dilucidar los méritos de su solicitud.

Evaluado el recurso ante su consideración, el 30 de agosto de 2019, el Tribunal de Apelaciones notificó una Sentencia mediante la cual confirmó la determinación del foro primario.

Aún en desacuerdo, el 30 de septiembre de 2019, el peticionario acudió ante este Foro mediante el recurso que nos ocupa. Arguyó que el Tribunal de Apelaciones erró al confirmar la determinación del foro primario que denegó su petición al amparo de la Regla 192.1 de Procedimiento Criminal, *infra*. Ello, sin celebrar una vista evidenciaria para dilucidar los méritos de su solicitud. Además, adujo que el foro apelativo intermedio incidió al determinar que el peticionario es responsable de la desestimación de la apelación por el mero hecho de haber sido notificado de los pormenores de esta, a pesar de que estaba representado por un abogado. A esos efectos, argumentó que su representante legal era el responsable de velar por sus mejores intereses, sin embargo, no ejerció sus labores diligentemente a pesar de que este le expresó su interés en apelar la sentencia que recaía en su contra. Solicitó que este Foro auscultara si al señor Arroyo Rodríguez se le privó de su derecho a apelación.

El 6 de diciembre de 2019, expedimos el auto de *Certiorari*. Posteriormente, el 17 de junio de 2020, el Procurador General presentó su alegato. En síntesis, expresó

que, aunque un abogado debe velar por los mejores intereses de su representado, ello no exime al acusado de ser diligente y responsable en los trámites de su caso. Indicó que el peticionario estaba al tanto de los incumplimientos de su abogado y que, aún así, no compareció al Tribunal de Apelaciones ni mostró interés en su apelación.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver la controversia ante nos.

## II

### -A-

La Regla 192.1 de Procedimiento Criminal, 32 LPRA Ap. II, provee para que una persona que está detenida en virtud de una sentencia condenatoria solicite que esta se anule, se deje sin efecto, o que se corrija por alguno de los siguientes fundamentos: (1) la sentencia fue impuesta en violación a la Constitución o a las leyes de Puerto Rico o a la Constitución y las leyes de Estados Unidos; (2) el tribunal no tenía jurisdicción para imponer esa sentencia; (3) la sentencia impuesta excede la pena prescrita por la ley, o (4) la sentencia está sujeta a ataque colateral por cualquier motivo.

Una moción a esos fines podrá presentarse en cualquier momento en la sala del tribunal que impuso la sentencia, incluso cuando la sentencia condenatoria haya advenido final y firme. Regla 192.1 de Procedimiento Criminal, *supra*; *Pueblo v. Pérez Adorno*, 178 DPR 946, 965 (2014). Además, en la

moción se deberán incluir todos los fundamentos que tenga el peticionario para solicitar el remedio provisto en esta regla. Íd. De modo que, los fundamentos que no se incluyan en la moción se entenderán renunciados a menos que el tribunal determine que no pudieron "razonablemente" presentarse en la moción original. Regla 192.1 de Procedimiento Criminal, *supra*. De igual forma, destacamos que el procedimiento provisto por esta Regla es de naturaleza civil y el peticionario es quien tiene el peso de la prueba para demostrar que tiene derecho al remedio solicitado. *Pueblo v. Román Mártir*, 169 DPR 809, 826 (2007).

Por otro lado, el inciso (b) de la referida Regla 192.1 de Procedimiento Criminal, *supra*, dispone que el juez deberá celebrar una vista, a menos que de la moción surja de manera concluyente que el peticionario no tiene derecho a remedio alguno al amparo de esta Regla. *Camarero Maldonado v. Tribunal Superior*, 101 DPR 552, 562 (1973). El peticionario viene llamado a persuadir al Tribunal con datos y argumentos concretos sobre los méritos de su planteamiento para que la vista sea necesaria. *Pueblo v. Román Mártir*, supra, págs. 826-827. De esta forma, el tribunal está facultado para rechazar la moción de plano si de su faz, la moción presentada no demuestra que el peticionario tiene derecho a algún remedio. *Pueblo v. Román Mártir*, supra.

Finalmente, resaltamos que la Regla 192.1 de Procedimiento Criminal, *supra*, es un remedio excepcional, no

concebido para sustituir el recurso de apelación de una sentencia. *Pueblo v. Román Mártir*, supra, págs. 823-824. Ahora bien, cuando un acusado es privado de una representación legal adecuada durante el proceso apelativo, este puede utilizar la Regla 192.1 de Procedimiento Criminal, *supra*, para solicitar un remedio. Así lo sostuvimos en *Pueblo v. Ortiz Couvertier*, 132 DPR 883, 896-897 (1993), bajo el fundamento de que la sentencia condenatoria está sujeta a un ataque colateral. De igual forma, en *Pueblo v. Ortiz Couvertier*, se contempló la posibilidad de resentenciar un acusado como remedio bajo la Regla 192.2, *supra*, sin la celebración de una vista a esos efectos. Íd.

-B-

Cónsono con lo anterior, el derecho a una representación legal adecuada en los procedimientos criminales se ha consagrado como parte fundamental de la cláusula de debido proceso de ley. *Pueblo v. Rivera*, 167 DPR 812, 816 (2006). Dicha representación debe ser una adecuada y efectiva incluso en la etapa apelativa. *Pueblo v. Ortiz Couvertier*, supra, pág. 892. *Pueblo v. Padilla Flores*, 127 DPR 698, 701 (1991). El derecho a tener asistencia de abogado se entiende infringido cuando "el abogado de un acusado, no obstante haber sido *expresamente instruido* por éste para que apele la sentencia que le ha sido impuesta, radica el escrito correspondiente fuera del término jurisdiccional que para ello provee nuestro ordenamiento jurídico y/o dicho abogado

incurre en cualquier otra acción u omisión que efectivamente priva a su representado de una adecuada representación legal en la etapa apelativa (…)". (Bastardillas en el original). *Pueblo v. Ortiz Couvertier*, supra, pág. 892.

Sin embargo, al examinar un reclamo de representación legal inadecuada se tiene que tomar en consideración lo siguiente: (1) existe una fuerte presunción de que la conducta del defensor está comprendida dentro del amplio ámbito de una razonable asistencia legal; (2) recae sobre el apelante el peso de la prueba de su indefensión por incompetencia del abogado; (3) la incompetencia enervante de la asistencia legal a que tiene derecho el acusado ha de ser de grado extremo, causante de perjuicio sustancial, al punto que sostenga la probabilidad de que de no haber incidido, el resultado del juicio hubiera sido distinto, y (4) el criterio final para adjudicar una reclamación de falta de efectividad en la defensa debe ser si la actuación del abogado de tal modo vulneró el adecuado funcionamiento del sistema adversativo que no pueda decirse que el juicio tuvo un resultado justo. *Pueblo v. López Guzmán*, 131 DPR 867, 880 (1992). Es decir, "la incompetencia enervante de la asistencia legal a que tiene el acusado ha de ser de grado extremo, causante de perjuicio sustancial, al punto que sostenga la probabilidad de que[,] de no haber incidido, el resultado del juicio hubiera sido distinto". *Pueblo v. Morales Suárez*, 117 DPR 497, 500 (1986).

En esta clase de situaciones, naturalmente, el peso de la prueba para demostrar que no se tuvo esa adecuada representación legal recae sobre el acusado y, de ordinario, requerirá la presentación de prueba satisfactoria a esos efectos. *Pueblo v. Ortiz Couvertier,* supra, pág. 893. En otras palabras, el promovente tiene que demostrar que la desatención y abandono del caso que eventualmente fue desestimado fue a causa de que el abogado no proveyó una representación legal adecuada.

Por último, el planteamiento sobre falta de adecuada y efectiva asistencia de abogado no se puede analizar y resolver en el vacío. "Dicho señalamiento tiene que, *necesariamente,* considerarse a la luz de la totalidad de los hechos, o circunstancias, del caso particular en ese momento ante la consideración del tribunal apelativo". *Pueblo v. López Guzmán*, 131 DPR 867, 880 (1992), citando a *Baldwin v. Maggio*, 704 F.2d 1325 (1983). La violación del derecho a tener la asistencia legal adecuada conlleva la revocación de la sentencia y la celebración de un nuevo juicio. *Pueblo v. Fernández Simono*, 140 DPR 514, 518-519 (1996).

**III**

A la luz de la normativa antes expuesta, procedemos a evaluar si los foros *a quo* erraron al denegar la *Moción de Resentencia al Amparo de la Regla 192.1 de Procedimiento Criminal* presentada por el peticionario. Respondemos en la negativa.

En su escrito, el señor Arroyo Rodríguez alegó que el desempeño deficiente de su representante legal en la etapa apelativa acarreó la desestimación del recurso lo que, a su vez, incidió en su debido proceso de ley al no poder apelar la sentencia condenatoria que recaía en su contra. Solicitó que, previo a adjudicar su moción se celebrara una vista evidenciara a los efectos de dilucidar si la representación legal fue una adecuada o no.

Como mencionáramos, un planteamiento sobre falta de adecuada y efectiva asistencia de abogado no se puede analizar y resolver en el vacío, sino que debe considerarse a la luz de la totalidad de los hechos y circunstancias de cada caso.

Según consta de la propia sentencia desestimatoria del Tribunal de Apelaciones, en el caso de autos no ignoramos que el representante legal del peticionario, en aquel momento actuó con desidia y desinterés en el caso. Pues aun cuando -a solicitud del propio peticionario- presentó la apelación oportunamente, no realizó ningún trámite ulterior para perfeccionar el recurso durante seis (6) meses. Ello, pese a las múltiples Resoluciones del Tribunal de Apelaciones proveyéndole términos para su cumplimiento. No fue sino hasta la cuarta Resolución que compareció -cuando se le impuso una sanción económica- a solicitar reconsideración e indicó que la transcripción se había retrasado por situaciones económicas del peticionario.

Sin embargo, no podemos perder de perspectiva que distinto a otros casos relacionados con la misma controversia, en el caso de autos, luego de varias incomparecencias por parte del abogado del peticionario, **se le notificó personalmente al peticionario en dos (2) ocasiones sobre los incumplimientos y la posible desestimación del recurso si no se cumplían con las órdenes del Tribunal.** De este modo, no sería correcto atribuirle el extremo abandono y desinterés al que se refirió el Tribunal de Apelaciones en la Sentencia desestimatoria solamente al representante legal del peticionario. Pues a este último, también se le notificó a efectos de que tuviera conocimiento de los incumplimientos de su representante legal y de la fatal consecuencia que podría acarrear su incomparecencia. Sin embargo, el expediente carece de una explicación por las que permaneció inalterada la situación.

Ante ese cuadro fáctico, el peticionario presenta una *Moción de Resentencia al Amparo de la Regla 192.1 de Procedimiento Criminal*, tres (3) años después de habérsele desestimado la apelación. En dicha moción, el peticionario venía obligado y tenía el peso de la prueba para demostrar los méritos de sus planteamientos. Es decir, el peticionario tenía que demostrar que la desatención y abandono de la apelación eventualmente desestimada, fue a causa de que su abogado no proveyó una adecuada representación.

Sin embargo, de un análisis de la moción presentada por el peticionario, así como, del expediente ante nuestra consideración no nos resta mas que concluir que está desprovista de fundamentos para conceder el remedio solicitado. Según esbozamos anteriormente, el peticionario debió aducir y fundamentar que existe una probabilidad razonable de que, si no fuera por la asistencia legal provista, el resultado de la apelación hubiera sido distinto. Ese es el estándar para examinar un reclamo de representación legal inadecuada. Nuestro ordenamiento le impone al promovente la carga probatoria para derrotar la presunción de que la conducta del representante legal estuvo comprendida dentro del ámbito de una razonable asistencia legal. Para activar el remedio extraordinario provisto por la Regla 192.1 de Procedimiento Criminal, *supra*, era esencial que el peticionario presentara datos y argumentos concretos en su solicitud que demostraran su derecho a un remedio. Sin embargo, el peticionario se limitó a presentar planteamientos escuetos tales como "desconocemos" las razones por las que se incumplieron las órdenes del tribunal, aun cuando de los autos surge que se le notificó al peticionario personalmente en la Institución Correccional sobre los incumplimientos y las consecuencias que acarreaban. Meras alegaciones por sí solas, son insuficientes para fundamentar una moción bajo la Regla 192.1 de Procedimiento Criminal, *supra*.

No podemos olvidar que las partes actúan a través de sus abogados. Por tanto, sería equivocado partir de la premisa de que hay una total desconexión entre un abogado y su cliente. Hacerlo presumiría que los abogados no se comunican con sus clientes durante el proceso judicial. En el caso de autos, el peticionario no alegó datos concretos que nos permitan inferir que fue colocado en un estado de indefensión por los incumplimientos provenientes exclusivamente de su representante legal y que fue por culpa de este que se produjo un resultado distinto al deseado. Tampoco esbozó estar sin comunicación con su representante legal durante el proceso apelativo o negó haber recibido las notificaciones del tribunal. Más aún, durante el trámite apelativo el representante legal del peticionario expresó que el incumplimiento de presentar la transcripción de la prueba oral se debía a "motivos económicos de su cliente". La moción nada aduce referente a eso.

A la luz de lo anterior, y de la totalidad de las circunstancias del caso de autos, es forzoso concluir que el peticionario no alcanzó el estándar de prueba requerido para sustentar sus alegaciones. Meras alegaciones sobre el reiterado incumplimiento del abogado por sí solas, son insuficientes para que proceda una moción al amparo de la Regla 192.1 de Procedimiento Criminal, *supra*.

Por último, destacamos que los hechos del caso *Pueblo v. Ortiz Couvertier*, supra, distan considerablemente de los

del caso de autos. Allí se resaltó que el señor Ortíz demostró un marcado interés en apelar su dictamen que fue tronchado por causas ajenas a su voluntad expresa. Luego de enterarse del incumplimiento de su abogado en presentar oportunamente la apelación, el señor Ortíz presentó varias mociones por derecho propio y procuró otra representación legal. Además, se destacó de que el señor Ortíz se enteró del incumplimiento del abogado *a posteriori*.

Distinto a ese caso, en el de autos, el peticionario se enteró del riesgo a una desestimación **previo** a que se dictara sentencia. Tampoco es evidente el marcado interés en apelar, pues esperó casi tres (3) años para aducir una inadecuada representación legal en la apelación. Por ello, carecemos de circunstancias que nos permitan colegir que la desestimación fue por causas ajenas a la voluntad expresa del peticionario, tal cual resolvió el Tribunal de Apelaciones.

Finalmente, en cuanto a la procedencia de la vista evidenciaría, la Regla 192.1 de Procedimiento Civil, *supra*, dispone que el juez celebrará una vista evidenciaria, a menos que tanto de la moción como del expediente del caso surja concluyentemente que el peticionario no tiene derecho a remedio alguno al amparo de esta regla. Por entender que la moción carece de fundamentos para su consideración, tampoco procedía celebrar una vista evidenciaria a esos efectos.

**IV**

Por los fundamentos que anteceden, se confirma el dictamen emitido por el Tribunal de Apelaciones.

Lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez emite Opinión Disidente a la cual se unieron los Jueces Asociados señores Estrella Martínez y Colón Pérez.


                              Javier O. Sepúlveda Rodríguez
                              Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

       v.                CC-2019-0768

Benito Arroyo Rodríguez

    Peticionario

Opinión disidente emitida por la Jueza Presidenta Oronoz Rodríguez a la que se unió el Juez Asociado señor Estrella Martínez y el Juez Asociado señor Colón Pérez

En San Juan, Puerto Rico, a 23 de diciembre de 2021.

El Sr. Benito Arroyo Rodríguez (señor Arroyo Rodríguez) evidenció que la representación legal que obtuvo en la etapa apelativa del procedimiento criminal fue insuficiente e inadecuada. Esto, de por sí, exigía ordenar al foro de instancia a que lo resentenciara de inmediato. Ahora, si alguien albergaba alguna duda, entonces se debió ordenar la celebración de la vista evidenciaria que provee la Regla 192.1 de Procedimiento Criminal, *infra*. Ello permitiría determinar si, en efecto, se le privó al señor Arroyo Rodríguez de su derecho a una representación legal adecuada que justificara poder apelar su convicción. Negarle esta posibilidad, de plano, provocó la desestimación del recurso que

presentó el señor Arroyo Rodríguez para impugnar su condena. Como si fuera poco, una mayoría de este Tribunal insiste en adjudicarle responsabilidad completa al señor Arroyo Rodríguez por la negligencia de su representante legal. Esta actuación priva al señor Arroyo Rodríguez de apelar su convicción y, en el proceso, se atropella su derecho constitucional a contar con una representación legal adecuada y efectiva. Tales circunstancias exigen que disienta de manera enérgica.

I

El señor Arroyo Rodríguez presentó una moción al amparo de la Regla 192.1 de Procedimiento Criminal, infra. Solicitó que se le resentenciara para que comenzara a transcurrir nuevamente el término para apelar la sentencia que se dictó en su contra. Fundamentó su petición en que tuvo una representación legal inefectiva en la etapa apelativa, lo que conllevó que se desestimara su recurso de apelación. El Tribunal de Primera Instancia declaró sin lugar la moción, sin más, y el Tribunal de Apelaciones lo confirmó. Insatisfecho con ese proceder, el señor Arroyo Rodríguez argumenta que ambos foros erraron al no conceder su solicitud o, cuando menos, ordenar la celebración de una vista evidenciaria previo a adjudicar su moción.

Tras recaer una sentencia condenatoria en su contra, el señor Arroyo Rodríguez ejerció su derecho a apelarla. Conforme a su deseo e interés, su abogado presentó un recurso oportunamente ante el Tribunal de Apelaciones. Sin embargo,

**durante seis (6) meses**, no realizó trámite alguno para perfeccionarlo. Tampoco compareció para ese o algún otro propósito. En ese periodo, el Tribunal de Apelaciones emitió **cuatro (4) órdenes** para que se presentara la transcripción de la prueba oral, con miras a que se perfeccionara el recurso de apelación. No obstante, el abogado del señor Arroyo Rodríguez se cruzó de brazos, ignoró y desacató **las primeras tres (3) órdenes**. En vez, compareció tras emitirse la cuarta orden. Cabe señalar que, el Tribunal de Apelaciones ordenó notificar la cuarta *Resolución* personalmente al señor Arroyo Rodríguez. Se le notificó al señor Arroyo Rodríguez a su dirección de récord, disponiéndose que el Departamento de Corrección y Rehabilitación notificaría personalmente al señor Arroyo Rodríguez en la institución penal correspondiente. No obstante, nada en el expediente ante nos apunta, y mucho menos evidencia, que esta *Resolución* le fuera notificada al señor Arroyo Rodríguez y si se le notificó o cuándo se le notificó.

Ante esta cuarta *Resolución*, el foro apelativo impuso al abogado una sanción económica y le concedió un término para presentar la transcripción de la prueba, so pena de desestimar la apelación. En esa ocasión, el representante legal del señor Arroyo Rodríguez solicitó reconsideración de la sanción y adujo, por primera vez, que la transcripción de la prueba se retrasó por situaciones económicas del señor Arroyo Rodríguez. Además, **se comprometió a presentarla** en o antes del 20 de mayo de 2016.

Ante ello, el Tribunal de Apelaciones emitió una quinta *Resolución*, redujo la sanción y concedió un término para pagarla. No obstante, **el representante legal** del señor Arroyo Rodríguez **incumplió nuevamente.** Esto llevó al foro apelativo intermedio a emitir una sexta *Resolución* e imponer una sanción económica adicional y ordenar que ambas se pagaran en o antes del 26 de mayo de 2016. Además, **en vista de que el abogado tampoco presentó la transcripción de la prueba,** le ordenó que, en el mismo término, mostrara causa por la cual no debía desestimar el recurso de apelación por abandono y falta de interés. **Fuera del término que se le concedió para ello,** el representante legal del señor Arroyo Rodríguez solicitó reconsideración y, a esos efectos, adujo los mismos fundamentos que había esbozado antes. Así, el foro apelativo intermedio emitió una séptima y última *Resolución* a través de la cual **concedió un término final** para presentar la transcripción, **so pena de desestimar el recurso de apelación.** Esta última *Resolución*, también le fue notificada al señor Arroyo Rodríguez a su dirección de récord. No obstante, nada en el expediente acredita que la *Resolución* se le hubiera notificado al señor Arroyo Rodríguez y cuándo. El abogado del señor Arroyo Rodríguez compareció el último día del término concedido y no **cumplió con lo ordenado,** sino que presentó una moción informativa y en reconsideración. Mencionó que la transcripción no se había completado debido a unos problemas personales que la taquígrafa estaba confrontando. Sin embargo, **no indicó cuándo presentaría la transcripción y tampoco solicitó un término a esos fines.** Como consecuencia y

en atención al patrón de incumplimiento **del abogado** del señor Arroyo Rodríguez, el 22 de junio de 2016 el Tribunal de Apelaciones desestimó la apelación. Razonó que **la parte apelante** (el señor Arroyo Rodríguez) incurrió en una falta de diligencia extrema en el trámite apelativo, pues ignoró —desde que presentó la apelación el 13 de octubre de 2015— su obligación de perfeccionarlo y cumplir las órdenes del tribunal a pesar de que se le apercibió que su incumplimiento podía conllevar la desestimación del recurso.

II

A. **El derecho a apelar y a una representación legal adecuada en casos criminales**

La Sección 11 del Artículo II de nuestra Constitución garantiza que "[e]n todos los procesos criminales, el acusado disfrutará del derecho […] a tener asistencia de abogado…". Art. II, Sec. 11, Const. ELA, LPRA, Tomo 1. Ese derecho se ha consagrado como una parte fundamental del debido proceso de ley. Ramos Acevedo v. Tribunal Superior, 133 DPR 599, 609 (1993). Esa garantía no se satisface por el mero hecho de contar con una representación legal, sino que esta debe ser adecuada y efectiva. Pueblo v. Padilla Flores, 127 DPR 698, 701 (1991). Particularmente, "la garantía exige un mínimo de competencia, calidad y desempeño en la representación legal del imputado durante el proceso criminal". Pueblo v. Rivera Montalvo, 205 DPR 352, 369 (2020).

Así, el derecho a tener una representación legal efectiva y adecuada puede quedar menoscabado cuando, entre otras cosas: (1) el abogado es incompetente para la tarea que se le

asigna, o (2) como cuestión de hecho, la labor que el abogado desplegó demuestra su inefectividad. Pueblo v. Ortiz Couvertier, 132 DPR 883, 888 (1993). Es importante destacar que ese derecho se activa en la etapa investigativa, una vez esta toma carácter acusatorio, y se extiende a otras etapas del procedimiento criminal, que **incluye la fase apelativa**. Ramos Acevedo v. Tribunal Superior, supra, pág. 609; Soto Ramos v. Supert. Granja Penal, 90 DPR 731,734 (1964).

Cabe aclarar que, en nuestra jurisdicción, al igual que en la federal, el derecho a apelar las convicciones criminales es de naturaleza estatutaria. Pueblo v. Rivera Toro, 173 DPR 137, 143 (2008); Pueblo v. Colón Canales, 152 DPR 284, 291 (2000). Independientemente, una vez la Asamblea Legislativa lo reconoce este "entra a formar parte del debido proceso de ley y por lo tanto adquiere una categoría cuasi-constitucional". Pueblo v. Esquilín Díaz, 146 DPR 808, 815 (1998) (citando a Pueblo v. Serbiá, 78 DPR 788, 792 (1955)). Por ende, todo convicto tiene un derecho constitucional a una representación legal adecuada y efectiva en la etapa apelativa. Pueblo v. Ortiz Couvertier, supra, pág. 892. Así, "[e]n aquellos casos en que el derecho positivo aplicable provee para una primera apelación como cuestión de derecho, el acusado convicto indigente tiene un derecho, de rango constitucional, a que se le nombre un abogado de oficio para esa primera apelación". Pueblo v. Esquilín Díaz, supra, pág. 815. Como expusimos, ese derecho constitucional "conlleva que la asistencia de abogado sea adecuada…". Íd.

La asistencia de abogado en la etapa apelativa "es de particular importancia ya que esta etapa del procedimiento penal es la única —y posiblemente última— oportunidad que tiene el acusado para demostrar que su convicción es una contraria a derecho". Pueblo v. Ortiz Couvertier, supra, pág. 889. Al igual que las demás etapas del procedimiento criminal, la apelación es un proceso adversativo en el cual, por su complejidad, se requiere la ayuda de un abogado. Íd. En la etapa apelativa, el derecho a una asistencia legal adecuada se entiende infringido en los supuestos siguientes:

> [C]uando el abogado de un acusado, no obstante haber sido *expresamente instruido* por éste para que apele de la sentencia que le ha sido impuesta, radica el escrito correspondiente fuera del término jurisdiccional que para ello provee nuestro ordenamiento jurídico y/o dicho abogado incurre en cualquier otra acción u omisión que efectivamente priva a su representado de una adecuada representación legal en la etapa apelativa; ello *independientemente* del hecho que el abogado sea uno de oficio o haya sido escogido libremente por el acusado. Íd., pág. 892. (Énfasis en el original).

Cuando se alega una violación al derecho a una representación legal adecuada y efectiva en la etapa apelativa, el peso de la prueba recae sobre el acusado y, de ordinario, requerirá que se presente prueba satisfactoria a esos efectos. Pueblo v. Ortiz Couvertier, supra, pág. 893. Esto es así, ya que existe una presunción de que la representación legal fue adecuada y satisfactoria. Pueblo v. Fernández Simono, 140 DPR 514, 519 (1996); Pueblo v. López Guzmán, 131 DPR 867, 880 (1992); Pueblo v. Morales Suárez, 117 DPR 497, 501 (1986). Así, quien alegue que se violó su derecho a una representación legal adecuada debe demostrar

que: (1) el desempeño de su representación legal fue deficiente dentro de un parámetro objetivo de razonabilidad; (2) esa deficiencia lo afectó, y (3) existe una probabilidad razonable de que el resultado hubiera sido distinto de no haber mediado esa deficiencia. Pueblo v. Rivera Montalvo, supra. A fin de cuentas, "[l]a incompetencia enervante de la asistencia legal a [la] que tiene el acusado ha de ser de grado extremo, causante de perjuicio sustancial, al punto que sostenga la probabilidad de que[,] de no haber incidido, el resultado del juicio hubiera sido distinto". Pueblo v. Morales Suárez, supra, pág. 501; Pueblo v. Marrero Laffosse, 95 DPR 186 (1967). Para determinar si se está ante ese escenario, se debe considerar la totalidad de las circunstancias del caso particular. Pueblo v. Ríos Maldonado, 132 DPR 146, 163 (1992); Pueblo v. López Guzmán, supra, pág. 880.

**B. La Regla 192.1 de Procedimiento Criminal**

La Regla 192.1 de Procedimiento Criminal, 34 LPRA Ap. II, R. 192.1, estatuye un mecanismo mediante el cual una persona que esté detenida en virtud de una sentencia puede solicitar que esta se anule, se deje sin efecto o se corrija, por al menos uno de los fundamentos siguientes: (1) la sentencia se impuso en violación a la Constitución o a las leyes de Puerto Rico o Estados Unidos; (2) el tribunal no tenía jurisdicción para imponer la sentencia; (3) la sentencia excede la pena que la ley prescribe, o (4) la sentencia está sujeta a ataque colateral por cualquier motivo. La moción al amparo de la Regla 192.1 de

Procedimiento Criminal, supra, se puede presentar en el tribunal sentenciador en cualquier momento después de que se dicte la sentencia condenatoria, incluso luego de que esta haya adquirido firmeza. Pueblo v. Pérez Adorno, 178 DPR 946, 965 (2010); Pueblo v. Román Mártir, 169 DPR 809, 823 (2007). Esto es así, ya que no existe un plazo o término para presentarla. Al considerar una moción al amparo de la Regla 192.1 de Procedimiento Criminal, supra, la cuestión que el tribunal se debe plantear es "si la sentencia impugnada está viciada por un error fundamental que contradice la noción más básica y elemental de lo que constituye un procedimiento criminal justo". Íd., págs. 965-966. Además, ante la presentación de una moción fundamentada, el tribunal debe celebrar una vista para dilucidar sus méritos, a menos que de la moción se desprenda de manera concluyente que el peticionario no tiene derecho a remedio alguno, en cuyo caso el tribunal la puede rechazar de plano. Pueblo v. Rivera Montalvo, supra; Camareno Maldonado v. Tribunal Superior, 101 DPR 552, 562 (1973).

Cabe resaltar que, en Pueblo v. Ortiz Couvertier, supra, este Tribunal reconoció que la Regla 192.1 de Procedimiento Criminal es un mecanismo procesal apropiado para que un convicto plantee la alegada violación a su derecho a tener representación legal adecuada en la etapa apelativa. Esto se debe a que, en esos supuestos, la sentencia condenatoria está sujeta a un ataque colateral. Al reconocer lo anterior, este Foro señaló que la determinación del foro primario en torno a la moción, "luego de escuchar y admitir la prueba que al

respecto sea presentada por las partes, deberá ser una fundada en prueba convincente y satisfactoria". (Énfasis omitido). Pueblo v. Ortiz Couvertier, supra, pág. 896. Si el foro primario entiende que, en efecto, se quebrantó el derecho a una representación legal adecuada en la etapa apelativa, el remedio a conceder es resentenciar a la persona promovente para que se active un término nuevo para apelar.

En Pueblo v. Ortiz Couvertier, supra, este Tribunal también reconoció que se puede resentenciar sin la necesidad de celebrar una vista. Allí este Foro se enfrentó a la situación de que el representante legal del promovente no había presentado el recurso apelativo oportuno, a pesar de las instrucciones expresas que su cliente le dio a esos efectos. Resolvió que no era necesario devolver el caso al Tribunal de Primera Instancia para que, tras celebrar una vista, determinara si, en efecto, se privó al peticionario del derecho a una representación legal adecuada en la etapa apelativa. Razonó que no había duda de que el señor Ortiz Couvertier instruyó expresamente a su abogado para que apelara la sentencia que se le impuso. Añadió que tampoco había duda de que, debido a causas ajenas a la voluntad expresa del señor Ortiz Couvertier, su abogado presentó el recurso de apelación fuera del término jurisdiccional aplicable. Resolvió que, ante ello, procedía devolver el caso al foro primario para que resentenciara al allí peticionario.

III

Nadie puede poner en duda que el abogado —no el señor Arroyo Rodríguez— incurrió en una desatención casi total de

los trámites apelativos en el caso del señor Arroyo Rodríguez.

**Incumplió, al menos, cinco (5) órdenes del foro apelativo intermedio,** así como el pago de las sanciones que se le impusieron por su incumplimiento. Además, **no compareció para trámite alguno ante el Tribunal de Apelaciones durante los primeros seis (6) meses** después de presentar la apelación.[1] Las veces escasas en las que compareció fueron esencialmente aquellas en las que se enfrentó a una sanción económica. Su indolencia y falta de proactividad llevaron al Tribunal de Apelaciones a concluir que existía falta de interés y negligencia extrema en el proceso apelativo, por lo que desestimó la apelación. Así, la desestimación respondió única y exclusivamente al incumplimiento del representante legal del señor Arroyo Rodríguez y este siquiera expuso justa causa.

Lo insólito es que el Tribunal de Apelaciones desestimó la apelación por los múltiples, reiterados, consistentes y prolongados incumplimientos del abogado del señor Arroyo Rodríguez los cuales no tienen que ver —y nunca tuvieron que ver— con este. Es insostenible que alguien que le falla a su cliente de manera patente —al punto de provocar la desestimación de su apelación criminal— no enfrente consecuencia alguna. Aún más inaudito es que quien tenga que cargar con las consecuencias nefastas de esa negligencia

---

[1] Precisa señalar que, el Tribunal de Apelaciones desestimó la apelación que presentó el señor Arroyo Rodríguez a ocho (8) meses desde que se incoó. Si tomamos en consideración que el representante legal compareció por primera vez ante el Tribunal de Apelaciones —a los seis (6) meses de entablada la demanda— ello demuestra que, el foro apelativo **desestimó en dos meses** el recurso de acción presentado sin tomar en consideración las situaciones fácticas que hemos señalado.

profesional sea una persona confinada, indigente, quien depositó su confianza en su abogado quien le falló una y otra vez.

No se justifica, pues, que el Tribunal de Apelaciones confirmara la denegatoria de plano de la moción que el señor Arroyo Rodríguez presentó bajo la Regla 192.1. Tampoco debieron pesar las supuestas dos (de siete) notificaciones personales al señor Arroyo Rodríguez. Reitero, no surge del expediente que exista prueba de que estas llegaron a su destinatario. Adjudicar al señor Arroyo Rodríguez, a ciegas, la responsabilidad del desempeño lamentable de su abogado es una injusticia grave. Distinto a lo que razonó la mayoría, el señor Arroyo Rodríguez nunca tuvo control de su apelación, razón por la cual no se le puede imputar responsabilidad por el desdén y negligencia de la persona cuyos servicios retuvo para defenderle.

Aun si se cree que el señor Arroyo Rodríguez supo de la conducta desdeñosa de su abogado, por razón de su cuarto incumplimiento, es razonable pensar que descansó en las expresiones de su representante legal de que cumpliría con su encomienda. Nótese que la segunda resolución que se le notificó al señor Arroyo Rodríguez fue la séptima, y última, *Resolución*, esto es, cuando ya no había nada que hacer. La realidad es que, aun si se cree, **por fe**, que el señor Arroyo Rodríguez recibió las dos resoluciones, nadie puede decir que este conoció o supo del patrón de incumplimiento de su abogado. En consecuencia, es incorrecto afirmar que el señor Arroyo Rodríguez es responsable de la desestimación de su

apelación porque no contrató un nuevo representante legal o porque no solicitó un término para hacerlo. Esta pretensión es irreal y, francamente, absurda. ¿Algún foro le dio un término -el que fuera- al señor Arroyo para que retuviera los servicios de otro abogado? Es decir, ¿qué orden exactamente incumplió el señor Arroyo Rodríguez? Ninguna. El señor Arroyo Rodríguez estaba privado de su libertad, con un abogado que no hizo su trabajo y bajo circunstancias en las cuales le era imposible tomar conocimiento —o tan siquiera actuar— de manera distinta.

Por otra parte, el derecho del señor Rodríguez a estar representado por su abogado de manera adecuada y efectiva no se interrumpe o cancela porque un tribunal notifique un par de resoluciones personalmente. El deber del abogado del señor Arroyo Rodríguez era, precisamente, abogar por este, es decir, defenderle en la etapa apelativa. En esa dirección lo primero que tenía que hacer era tramitar la apelación de manera diligente, sin que ello estuviese sujeto a acción afirmativa adicional del señor Arroyo Rodríguez. Insisto, el cumplimiento con las órdenes del Tribunal recaía en el representante legal del señor Arroyo Rodríguez, **no en él**. Aquí no había una representación legal híbrida. Y es que, de nada vale garantizar el derecho a una representación legal adecuada y efectiva en la etapa apelativa si se va a responsabilizar al representado por el incumplimiento de su abogado con sus obligaciones profesionales. Cabe recordar que, precisamente debido a la complejidad de los trámites apelativos, su carácter adversativo y las consecuencias

constitucionales —el derecho de libertad y el debido proceso de ley— es indispensable contar con asistencia legal adecuada en esa etapa del procedimiento penal. Más aun cuando existe una alta probabilidad de que esa sea la única oportunidad con la que cuente la persona convicta para probar que su convicción fue contraria a derecho.

Se añade que las personas privadas de libertad, como el señor Arroyo Rodríguez, tienen restricciones físicas que limitan los recursos y medios que tienen disponibles para hacer valer sus derechos y defender sus intereses. Sobre este punto, destaco que la mayoría de las personas que se encuentran recluidas en una institución penal carecen de acceso a métodos y recursos para lograr la efectiva tramitación de un recurso judicial. Específicamente, las personas confinadas, no tienen libertad de movimiento para desplazarse de un lugar a otro y procurarse asesoría o ayuda legal; no tienen acceso irrestricto o constante a teléfonos, computadoras o la internet, adolecen de los recursos económicos necesarios para contratar abogados o abogadas, no tienen acceso ilimitado a fotocopiadoras, libros jurídicos o asistencia legal, entre otros. Ineludiblemente para una persona confinada va a ser cuesta arriba acatar órdenes de los tribunales —tales como obtener una representación legal nueva— contestar mociones, comparecer ante el tribunal, entre otras gestiones que puede hacer una persona en la libre comunidad.

En ese sentido, la asistencia legal en la etapa apelativa cobra mayor relevancia, pues el abogado o la

abogada de la persona encarcelada tiene medios y accesibilidad con los que su cliente no cuenta. En consecuencia, no se puede desvirtuar ni reducir la importancia y el alcance de ese derecho al justificar su violación bajo el fundamento de que su tenedor no asumió una actitud suficientemente proactiva para que se le garantizara.

En cambio, una mayoría de este Tribunal encuentra improcedente la solicitud de resentencia que presentó el señor Arroyo Rodríguez por el hecho de que esta se presentó tres años luego de que el Tribunal de Apelaciones desestimó su recurso. Ello es una conclusión desacertada y aislada, totalmente, del contexto que el señor Arroyo Rodríguez experimenta.

Primero, según mencioné, una moción al amparo de la Regla 192.1 de Procedimiento Criminal, supra, se puede presentar en el tribunal sentenciador **en cualquier momento después de que se dicte la sentencia condenatoria**, incluso luego de que esta haya adquirido firmeza. Pueblo v. Pérez Adorno, supra, en la pág. 965; Pueblo v. Román Mártir, supra, en la pág. 823. La cuestión de umbral no es el momento en que se presenta sino, "si la sentencia impugnada **está viciada por un error fundamental que contradice la noción más básica y elemental de lo que constituye un procedimiento criminal justo**". Pueblo v. Pérez Adorno, supra, en las 15ágs.. 965-66. (énfasis suplido). Si la Regla 192.1 de Procedimiento Criminal, supra, provee para presentar la solicitud en cualquier momento, es un error decir que está tarde su petición.

Segundo, la determinación de una mayoría sobre que "[t]ampoco es evidente el marcado interés de apelar, pues [el señor Arroyo Rodríguez] esperó casi tres (3) años para aducir una inadecuada representación"[2] ignora las vicisitudes que hemos enfrentado en los pasados años, que obstaculizan -y en demasiadas ocasiones imposibilitan- que un confinado presente efectivamente un recurso judicial. Entre ellos, destaco: (1) el embate de los huracanes Irma y María; (2) los sismos producidos en la isla —especialmente en el sur de Puerto Rico, donde fue sentenciado el señor Arroyo Rodríguez, y (3) la pandemia del COVID-19. Todo lo anterior pudo haber incidido en la fecha de la presentación de la solicitud de resentencia. Aunque lo anterior sería conjeturar sobre las razones por las cuales el señor Arroyo Rodríguez presentó su petición cuando lo hizo, si no hay término, ¿cómo es posible que se le penalice una alegada demora? Ese dato, en mi opinión, no es relevante, pero si lo fue para la mayoría, lo mínimo que debió hacer era indagar las razones, hurgar la verdad y no basarse en especulaciones o suposiciones.

Por último, y lo subrayo una vez más, no hay indicios en el expediente de que, en efecto, el señor Arroyo Rodríguez haya recibido personalmente (o de forma alguna) las resoluciones cuarta y séptima que emitió el Tribunal de Apelaciones. De haberlas recibido, tampoco se sabe cuándo ello ocurrió. El momento en que se presentó la solicitud de resentencia es inmaterial cuando la violación al debido

---

[2] Véase, Opinión Mayoritaria.

proceso de ley por representación legal adecuada y efectiva fue patente y prístina.

En fin, resulta claro que las omisiones del abogado del señor Arroyo Rodríguez lo privaron de su derecho a estar representado en la etapa apelativa. La indiferencia del representante legal del señor Arroyo Rodríguez ante las órdenes del Tribunal de Apelaciones y su desatención comprueban que su labor como abogado fue inadecuada, inefectiva e insatisfactoria. Semejante desempeño frustró el interés del señor Arroyo Rodríguez a apelar la sentencia que recayó en su contra e incumplió con su obligación de defender los intereses de su cliente. El resultado: el señor Arroyo Rodríguez no podrá ejercer su derecho a apelar la sentencia de 26 años de confinamiento que se le impuso. Esto no podía pasar.

Estoy convencida que se violentó el derecho del señor Arroyo Rodríguez a ser representado adecuadamente. Ello, su vez, provocó una violación a su derecho a un debido proceso de ley. La falta de representación adecuada provocó la desestimación de la apelación del señor Arroyo Rodríguez y lo privó de su derecho a apelar la sentencia condenatoria que el Tribunal de Primera Instancia emitió. Si existía un ápice de duda, se debió conceder una vista evidenciaria en la que el abogado del señor Rodríguez rindiera cuentas. Al este Tribunal negarle siquiera una vista, respalda una violación doble a los derechos del señor Arroyo Rodríguez.

El propósito, más bien la razón de ser, de la Regla 192.1, supra, obligaba a conceder el remedio que el señor Arroyo Rodríguez solicitó, este es, que se le **resentenciara para que comenzara a transcurrir nuevamente el término para presentar una apelación**. Solo así se subsanaba la magnitud del agravio que sufrió ante una representación legal inadecuada por demás, y se le hubiera salvaguardado su derecho a apelar la sentencia que se dictó en su contra. Es inexplicable que la mayoría le niegue al señor Arroyo ese remedio.

Finalmente, destaco que mediante esta *Opinión Disidente* no se busca —ni se pretende— que se revoque automáticamente la convicción del señor Arroyo Rodríguez, sino, más bien, que se le respeten sus derechos constitucionales, concediéndole su día en corte.

**IV**

El mensaje que envía la mayoría es peligroso y desesperanzador para aquellas personas vejadas por quienes están llamados a protegerles: su representación legal. Se les dice alto y fuerte que, ante gestiones fútiles y negligentes de un abogado o una abogada, las puertas del Tribunal estarán clausuradas. Creo, defiendo y lucho por un Tribunal General de Justicia abierto, por lo que disiento enérgicamente.

Maite D. Oronoz Rodríguez
Jueza Presidenta
